Leslie C. DuPUY, Jr., Petitioner,

v.

The CITY OF WACO, Respondent.

No. A–10644.

Supreme Court of Texas.

Oct. 13, 1965.

Rehearing Denied Dec. 15, 1965.

Naman, Howell, Smith & Chase, Waco, for petitioner.

Thomas R. Hunter, City Atty., Jones, Boyd, Westbrook & Lovelace, Waco, for respondent.

STEAKLEY, Justice.

The City of Waco constructed a viaduct on South 17th Street in 1962 to improve the movement of vehicular traffic in the city. No property of Petitioner, Leslie C. DuPuy, was physically appropriated by the City but access to his property was impaired by the viaduct. The question we are called upon to decide in this suit by DuPuy against the City is whether damages for the diminishment in value of Petitioner's property resulting from the impairment of access is recoverable under Article I, Sec. 17, of the Constitution of Texas, Vernon's Ann.St., which provides: "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made * * *."

The trial court rendered judgment for the Petitioner upon the basis of favorable jury findings. The Court of Civil Appeals, as did the jury upon trial, found that the reasonable market value of the property has been substantially damaged for a public use. However, the Court of Civil Appeals reversed the judgment of the trial court and rendered judgment for the City upon the holding that the construction of the viaduct was a reasonable exercise of the police power, wherefore Petitioner had no cause of action since there was neither a physical taking nor a complete loss of access. City of Waco v. DuPuy, 386 S.W.2d 192.

The location of the property of Petitioner in relation to the viaduct and the surrounding streets is depicted on the accompanying schematic diagram. Prior to the construction of the viaduct, DuPuy fronted on South 17th Street and sided on an alley connecting with Franklin Avenue. The viaduct elevated 17th Street above the property of DuPuy and left him access to the front by a way under the viaduct between the supporting columns and dead-ending at DuPuy's property.

VIEW OF 17th STREET OVERPASS AND ENVIRONS DEPICTING WAYS OF INGRESS TO AND EGRESS FROM DU PUY OXYGEN SUPPLY COMPANY

FRANKLIN AVE.

ONE WAY →

Traffic leaving overpass

Concrete barrier: street beneath viaduct terminates

DU PUY

PAVED ALLEY

PAVED ALLEY

Railroad Tracks

ONE WAY

MARY AVE.

Alley

23' between supporting columns

16th Street

Railroad Tracks

18th STREET OVERPASS

JACKSON AVE.

17th STREET OVERPASS

Note: Two-way Traffic flow at ground level beneath overpass

ONE WAY

WEBSTER AVENUE

It is the position of Respondent, City of Waco, by its counter points, and of the attorneys for other cities filing amicus curiae briefs, that the City is not liable for the limitation of access to Petitioner's property by the construction of the viaduct because such was incidental to a reasonable exercise of the police power. The Attorney General of Texas, likewise by amicus curiae brief, asserts that without regard to any distinction between an exercise of the police power and the power of eminent domain, the damage of Petitioner is damnum absque injuria because there has been no invasion of any legal rights of Petitioner. The Attorney General argues that Petitioner has no damage because he still has complete access to the system of public roads and summarizes his position in saying that "The access is less convenient and the loss of traffic flow by the front door is apparent but it is settled that both the real elements of loss to commercial value are damnum absque injuria."

■ The problem is a recurring one of great difficulty and there is much literature on the ·subject.[1] The comment of this Court in City of San Antonio v. Pigeonhole Parking of Texas, 158 Tex. 318, 311 S.W.2d 218, 73 A.L.R.2d 640 (1958), is timely:

"The lack of uniformity among the authorities seems to be no less apparent now than it was in 1906 when it was observed in Sauer v. City of New York, 206 U.S. 536, 27 S.Ct. 686, 690, 51 L. Ed. 1176, that:

' * * * The right of an owner of land abutting on public highways has been a fruitful source of litigation in the courts of all of the states, and the

decisions have been conflicting, and often in the same state irreconcilable in principle. The courts have modified or overruled their own decisions, and each state has in the end fixed and limited, by legislation or judicial decision, the rights of abutting owners in accordance with its own view of the law and public policy. * * *' "

The demands of progress are inexorable and public improvements should not be discouraged; but just as compelling is the principle that private property rights are to be protected with all citizens sharing equally in the cost of progress. It was said in Brewster v. City of Forney, 223 S.W. 175 (Tex.Comm.App.1920):

"The Constitution of Texas and the decisions of her courts reveal a zealous regard for the rights of the individual citizen. Not only will they not permit his property to be 'taken' for a public use without compensation, but will not permit it to be damaged unless the citizen is compensated to the extent of such damage. To hold otherwise would be to put upon one citizen a burden which should rest upon the aggregate citizenship, as the direct beneficiary of the public work, the construction and operation of which has damaged the property of one citizen."

It was recognized by this Court in Chicago, R. I. & G. Ry. Co. v. Tarrant County Water Control and Improvement District No. 1, 123 Tex. 432, 73 S.W.2d 55 (1934), that our Constitution and statutes have been construed generally to authorize the recovery of compensation not only for property actually taken under the power of eminent domain, but for property damaged as well; that compensation is not required

---

1. See, e.g., Rayburn, Texas Law of Condemnation §§ 235–44 (1960); Cromwell, Loss of Access to Highways: Different Approaches to the Problem of Compensation, 48 Va.L.Rev. 538 (1962); Gibbes, The Control of Highway Access—Its Prospects and Problems, 12 S.C.L.Q. 377 (1960); Comment, Liability of Governmental Units for Damaging Private Property, 15 Baylor L.Rev. 403 (1963); Comment, Eminent Domain v. Police Power as Related to the Abutting Owner's Right of Access, 14 Baylor L.Rev. 70 (1962); Comment, Eminent Domain—Damages— Recovery for Interference with the Right of Access, 18 So.Cal.L.Rev. 42 (1944); Note, 32 Calif.L.Rev. 95 (1944).

to be paid in all cases of damage to property occasioned by the exercise of the police power; and that our decisions permit recovery by the citizen for damages consequent upon changing street and highway grades.

This Court more recently upheld a recovery of damages under Article I, Sec. 17, of the Constitution in an inverse condemnation proceeding without attempting a distinction between the power of eminent domain and an exercise of the police power. Brazos River Authority v. City of Graham, 163 Tex. 167, 169, 354 S.W.2d 99 (1962). See in this connection San Antonio River Authority v. Lewis, 363 S.W.2d 444 (Tex. 1963). As graphically expressed in Brazos River, our refusal to compartmentalize an exercise of sovereignty as either police power or eminent domain for the resolution of problems arising under Article I, Sec. 17, of the Constitution rests upon the manifest illusoriness of distinctions between them. And here, as in Brazos River, the property in question was not being used to the detriment of the public in any respect and has not been subjected to any type of regulation. One or the other of these elements is generally considered to be an essential characteristic of an exercise of the police power. City of San Antonio v. Pigeonhole Parking of Texas, 158 Tex. 318, 311 S.W.2d 218, 73 A.L.R.2d 640 (1958); Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W.2d 475 (1934); Spann v. City of Dallas, 111 Tex. 350, 235 S.W. 513, 19 A.L.R. 1387 (1921); Connor v. City of University Park, 142 S.W.2d 706 (Tex. Civ.App.1940, writ ref.).[2] Moreover, the viaduct was constructed for a public use, the necessary consequence of which was the causing of a property loss to Petitioner not common to the general public. These elements are generally considered to be supportive of special damages in law whether or not termed an exercise of the power of eminent domain. State v. Hale, 136 Tex. 29, 146 S.W.2d 731 (1941); Fort Worth Improvement District No. 1 v. City of Fort Worth, 106 Tex. 148, 158 S.W. 164, 48 L.R.A.,N.S., 994 (1913); Gulf, C. & S. F. Ry. Co. v. Fuller, 63 Tex. 467 (1885); Gulf, C. & S. F. R. R. Co. v. Eddins, 60 Tex. 656 (1884); Illinois Cent. R. Co. v. Moriarity, 135 Tenn. 446, 186 S.W. 1053 (1916); cf. Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922) and City of West University Place v. Ellis, 134 Tex. 222, 134 S.W.2d 1038 (1940).[3]

2. "If we differentiate eminent domain and police power as distinct powers of government, the difference lies neither in the form nor in the purpose of taking, but in the relation which the property affected bears to the danger or evil which is to be provided against." Freund, Police Power, § 511 (1904).

3. "The distinguishing characteristic between eminent domain and the police power is that the former involves the *taking* of property because of its need for the public use while the latter involves the *regulation* of such property to prevent the use thereof in a manner that is detrimental to the public interest. The police power may be loosely described as the power of the sovereign to prevent persons under its jurisdiction from conducting themselves or using their property to the detriment of the general welfare. * * * However, it is universally conceded that when land or other property is actually taken from the owner and put to use by the public authorities, the constitutional obligation to make just compensation arises, however much the use to which the property is put may enhance the public health, morals or safety." 1 Nichols, Eminent Domain §§ 1.42, 1.42(1) (3d 1964).

"*Eminent domain* then, is the actual physical invasion, acquisition and taking of private property to further some lawfully declared public purpose grounded in public necessity and convenience, in furtherance of public policy for some public purpose authorized by the constitution and statutes of the sovereign entity. * * * The exercise of *the police powers of the sovereign or its delegates* is the lawful exercise of a restraint or regulation upon private property or private rights or even the impairment or destruction of those rights in the public interest or for the general welfare." Rayburn, Texas Law of Condemnation, Sec. 4(1) (1960).

It is settled that a direct physical invasion of property is not required under the present provisions of Article I, Sec. 17, of the Constitution of Texas to entitle an owner to compensation. McCammon & Lang Lumber Co. v. Trinity & B. V. Ry. Co., 104 Tex. 8, 133 S.W. 247, 36 L.R.A., N.S., 662 (1911); Gulf, C. & S. F. Ry. Co. v. Fuller, 63 Tex. 467 (1885); Gulf, C. & S. F. R. R. Co. v. Eddins, 60 Tex. 656 (1884) It was the injustice of requiring an actual taking which explains the inclusion for the first time in the Constitution of 1876 of the requirement that compensation be paid for the damaging of property for public use. Judge Gaines wrote for this Court in Trinity & S. Ry. Co. v. Meadows, 73 Tex. 32, 11 S.W. 145, 3 L.R.A. 565 (1889): "The insertion of the words 'damaged or destroyed' in the section quoted was doubtless intended to obviate this question, and to afford protection to the owner of property, by allowing him compensation, when by the construction of a public work his property was directly damaged or destroyed, although no part of it was actually appropriated." See also State v. Hale, 136 Tex. 29, 146 S.W.2d 731 (1941), and Gainesville, H. & W. R. Co. v. Hall, 78 Tex. 169, 14 S.W. 259, 9 L.R.A. 298 (1890). In the exercise of the power to take or appropriate private property for public use, the state, counties and other subdivisions of this state, railroads and corporations to which the power of eminent domain has been delegated, are in the same position and are governed by the same rule. Hale, supra. The basic concept of Article I, Sec. 17, in its requirement for the payment of compensation was expressed by this Court in Hale in terms of private property being subjected to a perpetual servitude for the benefit of the public entitling the owner to compensation for his damage.

It is the settled rule in this state that an abutting property owner possesses an easement of access which is a property right; that this easement is not limited to a right of access to the system of public roads; and that diminishment in the value of property resulting from a loss of access constitutes damage. Powell v. Houston & T. C. R. Co., 104 Tex. 219, 135 S.W. 1153, 46 L.R.A.,N.S., 615 (1911); Eddins, supra; Fuller, supra; cf. American Const. Co. v. Seelig, 104 Tex. 16, 133 S.W. 429 (1911). This Court said in Powell:

"The ownership of the lot abutting upon the street carried with it as property the right of free and unimpaired access thereto and egress therefrom, and whatever impaired that right and caused a depreciation of the value of the lot constituted *damage* to the lot within the meaning of the Constitution."

It was reasoned in Fuller that the word "property" as used in the Constitution "means not only the thing owned, but also every right which accompanies ownership and is its incident"; and that "by damages is meant 'every loss or diminution of what is a man's own, occasioned by the fault of another,' whether this results directly to the thing owned, or be but an interference with the right which the owner has to the legal and proper use of his own." Eddins says it in these words: "Where, as the result of the occupation of it by the railroad company, the use of the street by the adjoining owner is very greatly impaired, and the injury in this respect is one special in its character, and not one common to the entire community at large, an action to recover such special damage will lie." To the same effect is Fort Worth Improvement District No. 1 v. City of Fort Worth, 106 Tex. 148, 158 S.W. 164, 48 L.R.A.,N.S., 994 (1913), in which this Court held that if a public work is constructed which inflicts an injury peculiar to certain property not suffered in common with other property in the community or section, such property is damaged within the meaning of the Constitution, and the law will not permit the infliction of such injury without the allowance of just compensation. See also

Hidalgo County Water Imp. Dist. v. Holderbaum, 11 S.W.2d 506 (Com.App.1928); Commissioners' Court of Harris County v. Kaiser, 23 S.W.2d 840 (Tex.Civ.App. 1929, writ ref.); Southern Traction Co. v. Fears, 199 S.W. 856 (Tex.Civ.App.1918, writ ref.); City of Houston v. Kleinecke, 26 S.W. 250 (Tex.Civ.App.1894, no writ hist.).

■ It is obvious that the construction of a large public improvement will have a different effect upon ingress and egress to and from properties which are differently located. The determination in a given situation of whether or not there has occurred a compensable damaging under the Constitution is to be approached from the premise that an access right is an easement judicially recognized as appurtenant to tangible property to protect the benefits of private ownership. This should not be extended to recognize a compensable damaging where a property owner has reasonable access to his property after construction of the public improvement. The benefits of private ownership have been assured so long as there is reasonable access and an action for compensation under the Constitution will not lie where such is the case. This is illustrated by the case of Moorlane Company v. Highway Department, 384 S.W.2d 415 (Tex.Civ.App.1964, writ ref. n. r. e.), upon which we acted contemporaneously with the granting of the application for writ of error in the instant case. Moorlane, et al., sued to recover compensation for an impairment of their property rights of access which resulted from the construction of a highway overpass. They claimed the right to compensation on the basis of the diminishment of access rights because construction of the overpass narrowed the street upon which they abutted. The Court of Civil Appeals rested its decision principally upon the holding that the Highway Department and City were acting under the police power in con-

structing the overpass, and there was not a complete taking of the right of access. However, the Court pointed out in its opinion that the property owners "still had access to their property and trucks could load and unload * * * although the large trucks could not use this street in its entirety as had been before the overpass was built. * * *" It was our view that the property owners were left with reasonable access and the lesser impairment was damnum absque injuria; the application for writ of error was therefore refused with the notation "no reversible error." See Rule 483, Texas Rules of Civil Procedure.

Other cases by the Texas courts upon which the City principally relies are likewise distinguishable from the case at bar. Lysaght v. City of Fort Worth, 359 S.W.2d 128 (Tex.Civ.App.1962, writ ref.), and City of Forth Worth v. Southwest Magazine, 358 S.W.2d 139 (Tex.Civ.App.1962, writ ref. n. r. e.), were suits for compensation for the removal of facilities of the property owner constructed in a city street. Holbrook v. State, 355 S.W.2d 235 (Tex.Civ. App.1962, writ ref. n. r. e.); Pennysavers Oil Co. v. State, 334 S.W.2d 546 (Tex.Civ. App.1960, writ ref.); and State Highway Commission v. Humphreys, 58 S.W.2d 144 (Tex.Civ.App.1933, writ ref.), were highway rerouting cases and stand principally for the propositions that an abutting property owner does not have a vested interest in the traffic that passes in front of his property; that he cannot recover for loss of trade resulting from a highway relocation; and that he is not entitled to damages because of the construction of controlled access highways in such manner as to deny direct access to the new major highway. It is also to be noted that the case of City of San Antonio v. Pigeonhole Parking of Texas, 158 Tex. 318, 311 S.W.2d 218, 73 A.L.R.2d 640 (1958), involved a mandamus action to compel the issuance of a permit for a curb cut, i. e., a regulation in the exercise of the police power.

The facts here go substantially beyond Moorlane. The initial and primary question is whether DuPuy's access rights have been impaired to an extent which constitutes a damage to property for a public use under Article I, Sec. 17, of the Constitution of Texas. In our view this is a question of law[4] and we hold that such has been shown here. Cf. Housing Authority of City of Dallas v. Higginbotham, 135 Tex. 158, 143 S.W.2d 79 (1940), 130 A.L.R. 1053, in which this Court held that the question of what is a public use under Article I, Sec. 17, of the Constitution is a question of law for determination by the courts. Prior to the construction of the viaduct the property of DuPuy fronted on South 17th Street with full access thereto; now, South 17th street is fourteen feet above the property and a concrete support forms a solid barrier to the immediate right of DuPuy's building. As a result, the building is left fronting on a cul-de-sac under the viaduct. It is generally held under analogous circumstances that a property owner left in a cul-de-sac is entitled to damages. Lee v. City of Stratford, 125 Tex. 179, 81 S.W.2d 1003 (1935), cites with approval the case of In re Hull, 163 Minn. 439, 204 N.W. 534, 205 N.W. 613, 49 A.L.R. 320 (1925), which states the rule as follows: "The owner of property abutting on a public highway has a special interest in the highway different from that of the general public. To recover damages for the obstruction or vacation of the highway, it is not essential that access to his property has been entirely cut off, but he cannot recover if his only complaint is that he is compelled to travel farther or over a poorer road in going to and from his property. * * * If, by the discontinuance of a highway running across, along or to the land in question, it is left abutting upon a cul-de-sac, the owner is deemed to have suffered an injury not common to the public." See also 25 Am. Jur., Highways, § 318; 49 A.L.R. 330, 351; 93 A.L.R. 639, 642; 2 Nichols, Eminent Domain, § 6.32(2) (3d ed. 1963); II McQuillin, Municipal Corporations, § 30.193 (3d ed. 1964); II American Law of Property, § 9.55 (1952). It is not enough that DuPuy can get to the system of public roads and the traveling public can get to his building. We are clear in the view that the construction of the viaduct has deprived DuPuy of reasonable access which entitles him to invoke the provision of the Constitution requiring the payment of compensation when property is damaged for a public use. Cf. City of Chicago v. Taylor, 125 U.S. 161, 8 S.Ct. 820, 31 L.Ed. 638 (1888); Breidert v. Southern Pacific Co., 61 Cal.2d 659, 39 Cal.Rptr. 903, 394 P.2d 719 (1964); People v. Ricciardi, 23 Cal.2d 390, 144 P.2d 799 (1944); Bacich v. Board of Control, etc., 23 Cal.2d 343, 144 P.2d 818 (1943); Rose v. State, 19 Cal.2d 713, 123 P.2d 505 (1942); Minnequa Lumber Co. v. City and County of Denver, Colorado, 67 Colo. 472, 186 P. 539 (1919); City of Chicago v. Burcky, 158 Ill. 103, 42 N.E. 178, 29 L.R.A. 568 (1895); Hendrickson v. State, 267 Minn. 436, 127 N.W.2d 165 (1964); Illinois Central R. R. Co. v. Moriarity, 135 Tenn. 446, 186 S.W. 1053 (1916). See also II McQuillin, Municipal Corporations, § 30.192 (3d rev. ed. 1964); 28 Tex.Jur.2d Highways and Streets, § 196; 39 C.J.S. Highways § 143b.

The trial court submitted two issues to the jury for the purpose of determining the amount of damages to which DuPuy was entitled. These issues required the jury to find the reasonable market value of the property immediately before and immediately after the construction of the viaduct. The respective findings of the jury were $15,500.00 and $7,000.00. The City as Appellant presented a point of error to the Court of Civil Appeals urging the

4. There is a contrariety of opinion at this point. The Supreme Court of California considers as one of law the question of whether there has been sufficient impairment of access to invoke a similar constitutional provision. People v. Ricciardi, infra. The Supreme Court of Minnesota treats the question as one of fact. Hendrickson v. State, infra.

proposition that the trial court erred in its charge because the jury was not limited to "compensable items of damage" in determining the before and after market value of DuPuy's property. The support therefor was an objection to the charge on the ground that it did not limit consideration of the jury to compensable items of damage. It was argued generally by the City before the Court of Civil Appeals that the jury was allowed "to consider circuity of travel, loss of view insofar as it affected highest and best use, loss of light and air and anything that they might pick up from the evidence or the exhibits." The record at bar reflects that the problem of an impairment of light, air and view is not involved. The trial court sustained special exceptions to the allegations in DuPuy's original petition concerning light, air and view and during the trial sustained objections of the City to testimony regarding these elements as being irrelevant and immaterial to any issue in the case and as not supported by the pleadings. However, there was included in the charge to the jury a special instruction which recited that evidence had been admitted relating to the possible effect the construction of the viaduct may have had on the view from Du-Puy's property and which limited consideration of such evidence to determination of the highest and best use for the property. The City did not specifically object to this instruction and we are at a loss to understand the reason for its inclusion since the trial court had sustained the objection of the City to the proffered evidence relating to the elements of light, air and view. But in any event we do not consider that harmful error was presented to the Court of Cvil Appeals in these respects. This Court in State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 979 (1936), recognized that the rule applicable to the determination of damages when there has been a permanent injury to land by reason of the construction of a public improvement requires an ascertainment of the difference between the market value of the land immediately before and immediately after the construction. The reasoning of the Court in resolving the question there presented is equally applicable to the problem here presented, i. e., it is not proper to instruct the jury as to certain items or elements of damages which may or may not be taken into consideration in ascertaining depreciation in market value; the Court there said: "It appears to us that in most if not in all cases the whole matter of what may be considered by the jury and what may not be considered will be best determined by the trial court in the admission and exclusion of testimony rather than by instructions to the jury."

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

GRIFFIN, J., dissenting.