**PRECAST STRUCTURES, INC., Appellant,**

v.

**CITY OF HOUSTON, Appellee.**

No. 14–95–00688–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 8, 1996.

Charles J. Wilson, Houston, for appellant.

Russel G. Richardson, Andrea Chan, Houston, for appellee.

Before MURPHY, C.J., and AMIDEI and ANDERSON, JJ.

## OPINION ON MOTION FOR REHEARING

AMIDEI, Justice.

The appellee's motion for rehearing is granted. We withdraw our prior opinion dated June 27, 1996, and substitute the following in its place.

Precast Structures, Inc., ("Precast") appeals from a condemnation judgment in favor of the City of Houston ("City"), appellee, awarding the City 1,514 square feet of land out of Precast's business property and awarding Precast $2,032.00 as payment for the land. In nineteen points of error, appellant contends (1) the trial court did not have jurisdiction of the suit filed by the City because the City made no bona fide offer to purchase the property prior to filing suit and, alternately, (2) if there was jurisdiction to try the suit, the trial court erred in refusing to give Precast a jury trial on the issue of damages to the remainder of appellant's property. We affirm in part and reverse and remand in part.

The City of Houston contacted Precast in February, 1991, to purchase 1,514 square feet of the southeast corner of its place of business in southeast Houston. The property was to be used by the City in connection with the construction of a new road named Clearwood. Precast manufactures prestressed concrete beams and pillars used in highway and bridge construction. The City had two appraisers go to the property and prepare estimates on the value of the property. Based on these appraisals, the City offered Precast $951.00 for the tract to be taken. Precast rejected the offer and told the City it would have to relocate its equipment within its property because of the taking of a five foot strip off its southern end near its stress beds. Precast advised the City that by moving the new right-of-way line closer to the stress bed, it would no longer be possible to move long beams from the stress bed to the storage area because the beams would hang out in the street and would cause a traffic hazard. Precast told the City it would cost over $800,000.00 to relocate the stress bed and the highway beam bed.

The City filed a condemnation suit against Precast for the land on November 15, 1991. Two days prior to filing this suit, the City retained another appraiser, William Kvinta, to make a "more complete evaluation" of the property. Kvinta testified that he was strictly a real estate appraiser and was hired by the City to appraise the land for the benefit of the special commissioners appointed by the court. Kvinta appraised the land at $1,411.00 and the value of the damage to the improvements on the land at $10,000.00 for a total of $11,411.00. The commissioners awarded Precast $12,000.00 for the land and damages to the remainder. Precast answered the petition of the City alleging (1) no jurisdiction because of the failure of the City to make a bona fide offer and, alternately, (2) if the court found that it had jurisdiction, Precast suffered damages to the remainder of its land and should be compensated.

The trial court bifurcated the trial to determine the jurisdiction issue first, then the damages. At the jurisdiction portion of the trial, the trial court found that the City complied with Section 21.012(b)(4) of the Texas Property Code, which mandates a finding that the City and Precast "are unable to agree on the damages" before filing a condemnation petition. The court found that

the parties could not agree and the court had jurisdiction of the condemnation suit. The court entered an interlocutory judgment finding jurisdiction and then set the case for trial on the damage issue. At the bench trial on the damage issue, the trial court made a preliminary finding that, as a matter of law, Precast suffered "no material and substantial impairment to access." The trial court held there was no fact issue for a jury to decide and therefore, no jury would be called. The trial court refused to admit any evidence on Precast's claim of damage to its remainder. Precast then presented its evidence as a bill of exceptions for review on appeal.

The evidence in the bill of exceptions consists of testimony to the effect that the taking of the land will necessitate the making of numerous improvements on the remainder and will cost $751,000.00. Prior to the taking, Precast used the "old exit" to Easthaven which was located north of the southeast corner of Precast. Precast had used the "old exit" to carry 125–foot beams to Easthaven and then south on Easthaven to Almeda–Genoa. The City built a "new exit" at the southeast corner which allows the trucks to exit the plant directly on to Clearwood. Clearwood bisected Easthaven and eliminated Easthaven as a route for Precast. Clearwood now joins Precast's property at the southeast corner, replacing Easthaven as an access from Precast at that location. However, using this "new exit" to Clearwood creates a dangerous condition by having truck traffic too close to the "working end" of the stress beds where people are working and hydraulic jacks are located pulling up to 1,000,000 pounds of stress. Relocation of the "working end" of the stress bed is necessary and will cost $351,000.00. To use this new exit, traffic will now have to be routed through the plant, which will require more radius for turning special trucks. The piling bed in the plant will have to be relocated at a cost of $400,000.00 to provide the necessary turning radius. If one of the other exits were used by the special trucks hauling the 125–foot beams, the trucks would have to now negotiate a sharp curve off Easthaven at its intersection with Clearwood, north of the "new exit." The trucks cannot get on Clearwood via Easthaven without going over curbs and off the pavement which could cause the beams to twist, crack and possibly explode. Therefore, Precast contends that it can only use the "new exit" to get the trucks carrying 125–foot beams on to Clearwood. The use of the "new exit" will cost Precast $751,000.00 to relocate stress beds, piling beds, and utilities. The three old exits located north of the new exit (adjoining the remaining part of Easthaven at the eastern boundary of Precast) can still be used by trucks carrying up to 75–foot beams. Trucks using these three old exits will be required to exit Precast on to the remaining part of Easthaven, which now intersects Clearwood, then to turn right on Clearwood and proceed south to Almeda–Genoa.

The evidence further demonstrates that the large trucks carrying the 125–foot beams would now have similar difficulties in turning right on Almeda–Genoa from the new Clearwood street. There was evidence that there were no problems before the taking when the trucks could exit the plant and turn right onto Easthaven, then south on Easthaven to Almeda–Genoa, and then turn right from Easthaven on Almeda–Genoa.

■ In points of error one through twelve, appellant argues that the City did not make a bona fide offer to purchase Precast's property before filing this suit and that the trial court did not have jurisdiction to try this case. Precast claims that the City was informed that the taking would necessitate the relocation of its beam beds and that the cost to relocate would exceed $800,000.00. Precast further contends that the City hired appraiser, Kvinta, "to make a determination as to what would be fair compensation" to Precast because the property needed "more complete evaluation." Precast claims that by hiring Kvinta to further appraise the property more completely, the City cannot claim that it made the $951.00 offer in good faith. Kvinta did not finish his appraisal until three months after suit had been filed by the City.

The City argues that it made a bona fide offer to Precast when it offered $951.00 for the tract before it filed suit. The City argues that their real estate supervisor, Ms. Christin Steele, testified that she met with

Precast about three times and submitted a written offer to it for the $951.00, but Precast rejected the offer. Ms. Steele testified also that the negotiations with Precast had reached an impasse because the City could not offer the minimum amount Precast had requested for the taking. The City hired Kvinta to make another appraisal after it determined that it would have to pursue the suit. The City approved the condemnation suit by its motion to be effective November 12, 1991. On November 13, 1991, the City retained Mr. Kvinta to appraise the property for the benefit of the meeting of the special commissioners. On November 15, 1991, suit was filed. Mr. Kvinta's written appraisal is dated February 24, 1992. Mr. Kvinta testified he was not qualified to appraise the costs of relocating any equipment on the property and that he had advised the City to use an engineer to determine any costs that might be incurred by Precast to relocate their beam beds. Mr. Kvinta's written appraisal does not show how he arrived at the $10,000.00 damage to improvement figure. The appraisal showed that he valued the improvements on the remainder at $183,410.00 before the taking and $173,410.00 after the taking with no explanation as to how he arrived at the $10,000.00 diminution in value of the improvements. The only explanation given for the diminution in value was stated in his appraisal:

> No detailed appraisal was made of the improvements. The estimated value of the improvements is based on the Harris County Appraisal District records. The estimated value of the subject improvements based on Harris County Appraisal District records is $183,610.00.

Kvinta did not testify as to how he arrived at the $10,000.00 figure for diminution in value of the improvements. The appraisal shows *no* diminution in value to the remaining land by the taking. Kvinta testified that he was hired to make the appraisal for the special commissioners.

The evidence shows that *before* it hired Kvinta to appraise the parcel, the City had officially entered upon the minutes its motion and order to proceed with a condemnation suit in this matter. Obviously, this is evidence that the City considered further negotiations with Precast to be futile.

The City has maintained and still maintains that the damages to the remainder sought by Precast are not compensable as severance damages to the remainder because Precast has only been inconvenienced as a result of the taking. *State v. Schmidt*, 867 S.W.2d 769, 779 (Tex.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 2741, 129 L.Ed.2d 861 (1994). If the City's contention were found to be correct at a trial on this matter, and a jury were to find Precast was not entitled to severance damages, then the City's offer of $951.00 before the petition was filed would be bona fide.

In *State v. Dowd*, 867 S.W.2d 781, 783 (Tex.1993), the trial court dismissed the State's petition for want of jurisdiction on the grounds that the State failed to prove that the State and the condemnee had been unable to agree as to the price of the taking. The trial court found that the State instructed the appraiser not to include diminution in value to the remainder because of any factors that also negatively affected other landowners abutting the project, because such damages were considered noncompensable "community damages." This instruction by the State was contrary to their adopted policy of including such factors in the appraisal. The supreme court found that the State's instructions to its appraiser were consistent with its holding in *Schmidt*, that landowners are not as a rule entitled to recover severance damages for the diversion of traffic, inconvenience of access, impaired visibility, and temporary construction inconvenience and, therefore, the State's offer which *did not include damage to the remainder* was bona fide.

In *State v. Hipp and Dowd*, 832 S.W.2d 71 (Tex.App.—Austin 1992, writ denied as to *Hipp*) *reversed as to Dowd only, State v. Dowd*, 867 S.W.2d 781 (Tex.1993), the court of appeals held:

> We conclude that the Texas statute does not demand prolonged negotiations or a series of offers and counteroffers between the parties. Instead, the statutory prerequisite may be satisfied if the condemnor makes a single bona fide offer to a land-

owner that the condemnor in good faith feels is the amount of compensation due, and the landowner rejects that offer. [citations omitted]

*Id.* at 77–78.

In this case, the City contends Precast's claim for material and substantial impairment damages is not compensable and they have only been inconvenienced. We find that the City was acting in good faith when it offered Precast $951.00 for the parcel and did not consider any damage to the remainder. The offer was made in the belief that the City had a valid defense to the claim for damages to the remainder and was bona fide under *Dowd*, 867 S.W.2d at 783. We find that the trial court had jurisdiction to try the suit. We overrule appellant's points of error one through twelve.

Points of error thirteen through nineteen contend, in the alternative, if this court finds that the trial court had jurisdiction, then the trial court erred in not admitting evidence of damage to the remainder to a jury.

■ The preliminary question of whether there is "material and substantial impairment" to the remainder as a direct result of the taking is a question of law. *Schmidt*, 867 S.W.2d at 777. The trial court must first determine that access rights have been materially and substantially impaired. *Id.* This threshold determination was found against Precast by the trial judge and the trial judge accordingly denied Precast a jury trial on its evidence of damage. The trial judge did not hear any evidence before making its ruling and ruled in chambers that Precast suffered only inconvenience, not "material and substantial impairment" as a result of the taking. Precast now challenges this finding by the trial court.

■ We review questions of law de novo and without deference to a lower court's conclusion. *State v. Heal*, 917 S.W.2d 6, 9 (Tex. 1996).

In *DuPuy v. City of Waco*, 396 S.W.2d 103 (Tex.1965), the court held:

It is the settled rule in this state that an abutting property owner possesses an easement of access which is a property right; that this easement is not limited to a right of access to the system of public roads; and that diminishment in the value of property resulting from a loss of access constitutes damage [under Article I, Section 17 of the Texas Constitution].

*Id.* at 108.

■ The City argues that the evidence presented by Precast supports the trial court ruling and the City has no legal duty to design a street to accommodate vehicles which exceed the legal length allowed by state law. The City contends the new routes that Precast must take present only noncompensable inconvenience and are not impossible to travel. We disagree.

The *City of Waco v. Texland Corp.*, 446 S.W.2d 1 (Tex.1969), involved the taking of property used for special purposes. The access to Texland's loading docks was partially blocked by piers supporting the City's viaduct. It became difficult, but not impossible, for trucks to maneuver in the area in front of the docks. The supreme court found that there was a material and substantial impairment of access that was compensable as a damaging of properties for public use. *Id.* at 4.

■ The measure for determining severance damages was established in *State v. Carpenter*, 126 Tex. 604, 89 S.W.2d 194 (Com.App.1936):

[T]he damages are to be determined by ascertaining the difference between the market value of the remainder of the tract immediately before the taking and the market value of the remainder of the tract immediately after the appropriation, taking into consideration the nature of the improvement, and the use to which the land taken is to be put.

*Id.* 89 S.W.2d at 197–198.

In *Schmidt*, 867 S.W.2d at 774–79, the supreme court held that landowners are not as a rule entitled to compensation for a decrease in value of the remainder due to the diversion of traffic, increased circuity of travel, lessened visibility, and interim construction inconvenience.

In a later case, the supreme court held that compensable factors to the remainder in

a partial taking were a bisected building, *a partial, permanent denial of legal access to the roadway along a portion of the adjoining boundary, and the required relocations of building sites and driveways. State v. Munday Enterprises,* 868 S.W.2d 319, 320–321 (Tex.1993), *cert. denied,* 513 U.S. 812, 115 S.Ct. 64, 130 L.Ed.2d 21 (1994).

In *State v. Centennial Mortgage Corp.,* 867 S.W.2d 783, 784 (Tex.1993), *cert. denied,* 513 U.S. 812, 115 S.Ct. 64, 130 L.Ed.2d 21 (1994), the supreme court held that costs of replacing detention ponds and other improvements formerly located on the condemned strip of land, and the resulting loss of parking spaces on the remainder were compensable damages. *Id.* at 784.

In *State v. Heal,* 917 S.W.2d 6 (Tex.1996), the supreme court held that the rules concerning impairment of access previously established in *DuPuy v. City of Waco,* 396 S.W.2d 103 (Tex.1965) are controlling and held that a landowner is entitled to compensation when a public improvement destroys all reasonable access, thereby damaging the property. *Id.* at 10. The *Heal* decision also recognized the rule in *DuPuy* that no right to compensation extends to a property owner who has reasonable access to his property after the construction of the public improvement because the benefits of private ownership have been preserved. *Heal* also noted that all prior impaired access cases involved physical obstructions created by a public improvement. *Id.* at 11. The condemnees in *Heal* were not entitled to compensation because of alleged noise damages and increased traffic impairing their access to their driveway. The *Heal* decision stated that such damages claimed by the Heals were evidence of inconvenience, not material and substantial impairment. *Id.* at 11.

The use of the special trucks by Precast involves trailers with extended lengths to accommodate highway and concrete bridge beams of up to 125 feet in length. Prior to the taking, Precast was able to use Easthaven and Almeda–Genoa without the City having to make any special improvements to these streets for these purposes. Now, by taking the old exit and the southeast corner of Precast's property, they have created a situation making access extremely difficult and dangerous. To correct the situation, it has become necessary for Precast to relocate some of its equipment in order to safely operate the special trucks. We find that Precast is entitled to compensation because its access rights have been "materially and substantially impaired" as a matter of law. *Texland,* 446 S.W.2d at 2. We hold that Precast is entitled to a jury trial on the issue of damages caused to its remainder which are directly attributable to impairment of its access. *See Westgate, Ltd. v. State,.* 843 S.W.2d 448, 457 (Tex.1992). Similar remainder damages were found compensable in *DuPuy, Texland, Munday Enterprises, and Centennial Mortgage,* as previously set forth in this opinion. We sustain appellant's points of error thirteen, fourteen, fifteen, sixteen, seventeen, eighteen and nineteen.

That part of the judgment of the trial court finding the state had jurisdiction to file this condemnation suit is affirmed. That part of the judgment of the trial court holding as a matter of law that Precast's property was not materially and substantially impaired is reversed, and this case is remanded for trial on the issue of damages to Precast's property.