**CITY OF HOUSTON, Appellant,**

v.

**PRECAST STRUCTURES, INC., Appellee.**

No. 14–99–00739–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 25, 2001.

Russell G. Richardson, J. Mark Breeding, Houston, for appellant.

Charles J. Wilson, Houston, for appellee.

Panel consists of Justices EDELMAN, FROST, and MURPHY.*

## OPINION ON REHEARING

FROST, Justice.

Appellant's motion for rehearing is overruled; the opinion issued in this case on July 19, 2001, is withdrawn, and the following opinion is substituted in its place.

* Senior Chief Justice Paul C. Murphy sitting by assignment.

This is the second appeal from a trial to determine the measure of damages in a condemnation proceeding. City of Houston appeals from a judgment in excess of $1 million for damage to the remainder of an approximately thirty-acre tract caused by the condemnation of 1,514 square feet for a road construction project and the resulting impairment of the property owner's access. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Precast Structures, Inc. manufactures prestressed and precast concrete products, which are used in highway and building construction. In 1992, City of Houston condemned 1,514 square feet of land from the southeast corner of a nearly thirty-acre tract on which Precast operated a manufacturing plant. Before the condemnation, Precast's property was bounded on its eastern edge by Easthaven Road, a two-lane north-south road that crossed Almeda–Genoa Road south of Precast's property. Almeda–Genoa, in turn, provides access to Interstate 45. The City used the condemned property in connection with the construction of a new four-lane road named Clearwood. Although Clearwood also runs north-south, it sits farther to the east at its northern end, then bends westward so that it crosses Easthaven at the southeast corner of Precast's property before intersecting Almeda–Genoa at a point west of where Easthaven did. As a result of the Clearwood project, Easthaven no longer intersects Almeda–Genoa, but instead ends at an intersection with the new road, just to the east of where Precast's property was condemned.

As part of the Clearwood project, the City eliminated one exit to Easthaven in the southeast corner of Precast's property and constructed a new exit providing direct access to Clearwood by way of Tave-nor Lane, a road that bounds the southern edge of Precast's property. Precast contends that trucks carrying concrete products over a certain length would have to use this new exit, rather than exiting onto Easthaven as before. Because of the dangers caused by the increase in truck traffic inside the plant, Precast alleges that it would have to change the location and design of certain equipment on its property. Precast contends that it is entitled to damages for the diminution in the value of the remainder of its property.

At a bench trial, the trial court made a preliminary finding that, as a matter of law, Precast suffered "no material and substantial impairment to access." Based on this finding, the trial court refused to admit any evidence on Precast's claim of damage to its remainder, and awarded Precast $2,032 as payment for the condemned land. Precast prepared a bill of exception consisting of testimony regarding damages to Precast's remainder. On appeal, this court reversed the trial court's judgment, concluding that "Precast is entitled to compensation because its access rights have been 'materially and substantially impaired' as a matter of law." *Precast Structures, Inc. v. City of Houston*, 942 S.W.2d 632, 637 (Tex.App.—Houston [14th Dist.] 1996, no writ). This court then remanded the case for trial on the issue of Precast's damages. *Id.*

On remand, the jury determined that Precast's remainder property was damaged in the amount of $658,467. After adding the stipulated value of the 1,514 square feet and prejudgment interest and subtracting the amount the City already had paid into the court's registry, the trial court entered judgment in favor of Precast for $1,063,005. The City filed a motion for new trial, which the trial court denied.

In its sole issue on appeal, the City argues that the evidence is legally insuffi-

cient to support the jury's verdict, for two reasons: (1) the opinions expressed by Precast's two damage experts are of no probative value; and (2) Precast's damages are not recoverable as a matter of law. In one cross-point, Precast argues that the City should be sanctioned under Texas Rule of Appellate Procedure 45 for filing a frivolous appeal.

## II. STANDARD OF REVIEW

The City's arguments are subject to a legal sufficiency or "no evidence" review. A legal sufficiency point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of a vital fact. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). If the record contains any evidence of probative force to support the jury's finding, the legal insufficiency challenge must be overruled. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997).

## III. EXPERT TESTIMONY ON DAMAGES

The City first argues that the opinions expressed by Precast's two expert witnesses on damages are of no probative value, and therefore no evidence to support the jury's verdict. Precast contends that the City waived this argument on appeal by failing to present it to the trial court. We agree with Precast.

To preserve a complaint for appellate review, a party must first demonstrate that the complaint was made to the trial court by a timely request, objection, or motion. TEX.R.APP. P. 33.1. A "no evidence" issue is raised in the trial court, and thus preserved on appeal, in one of five ways: (1) a motion for instructed verdict, (2) a motion for judgment notwithstanding the verdict, (3) an objection to the submission of the issue to the jury, (4) a motion to disregard the jury's answer to a vital fact issue, or (5) a motion for new trial. *Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex.1991). The City concedes that its no-evidence complaint was raised only through its motion for new trial. However, a motion for new trial fails to preserve a legal sufficiency argument for review if the argument urged on appeal was not raised in the motion or otherwise during trial. *Arroyo Shrimp Farm, Inc. v. Hung Shrimp Farm, Inc.*, 927 S.W.2d 146, 151 (Tex.App.—Corpus Christi 1996, no writ); *see also Knoll v. Neblett*, 966 S.W.2d 622, 639 (Tex.App.—Houston [14th Dist.] 1998, pet. denied) ("Objections on appeal must conform to those made at trial or they are waived."). In its motion, the City made only two arguments: (1) the evidence "clearly established that Precast did not actually expend any money to correct allege [*sic*] access problems directly attributable to the City's taking," and (2) the evidence "shows the [*sic*] Precast's remainder property enjoyed equal if not better access after the City's taking and as such there was no material and substantial impairment of access." We conclude that neither of these arguments adequately apprised the trial court of the City's intent to complain, as it does now, that the testimony of Precast's two experts had no probative value, and therefore cannot be considered in support of the jury's damage award. *See* TEX.R. CIV. P. 321 (requiring that each point relied upon in a motion for new trial refer to the trial court's alleged error "in such a way that the objection can be clearly identified and understood by the court"). The portion of the City's legal

sufficiency issue regarding the testimony of Precast's experts is overruled.

### IV. DAMAGES TO PRECAST'S REMAINDER

The City also argues that Precast is precluded from recovering its alleged damages as a matter of law. Before addressing this argument in detail, we briefly summarize the relevant Texas law regarding compensable damages in condemnation proceedings.

### A. Compensable Damages

■ The Texas Constitution provides: "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made...." TEX. CONST. art. I, § 17. When an entire tract of property is condemned, the landowner is entitled to payment of the local market value of the property. TEX. PROP.CODE ANN. § 21.042(b) (Vernon 2000). When only part of a person's property is taken, however, the constitution requires adequate compensation both for the part taken and "severance damages" to the remainder. *State v. Schmidt*, 867 S.W.2d 769, 772 (Tex.1993). Thus, section 21.042(c) of the Texas Property Code provides:

> If a portion of a tract or parcel of real property is condemned, the special commissioners shall determine the damage to the property owner after estimating the extent of the injury and benefit to the property owner, including the effect of the condemnation on the value of the property owner's remaining property.

The method for determining severance damages was established in *State v. Carpenter*, 126 Tex. 604, 89 S.W.2d 194, 197 (1936), as follows:

> [T]he damages are to be determined by ascertaining the difference between the market value of the remainder of the tract immediately before the taking and

the market value of the remainder of the tract immediately after the appropriation, taking into consideration the nature of the improvement, and the use to which the land taken is to be put.

■ As a general rule, a landowner may not recover severance damages if "the diminution in value of the remainder [is] caused by the acquisition and use of adjoining lands of others for the same undertaking." *Schmidt*, 867 S.W.2d at 778 (quoting *Campbell v. United States*, 266 U.S. 368, 372, 45 S.Ct. 115, 117, 69 L.Ed. 328 (1924)). In *Schmidt*, the court held that the so-called *"Campbell* rule" should be applied unless three qualifications are met:

(1) the land taken from the condemnee landowner was indispensable to the ... project;

(2) the land taken constituted a substantial (not inconsequential) part of the tract devoted to the project; and

(3) the damages resulting to the land not taken from the use of the land taken were inseparable from those to the same land flowing from the condemnor government's use of its adjoining land in the ... project.

*Id.* (quoting *United States v. 15.65 Acres of Land*, 689 F.2d 1329, 1332 (9th Cir.1982)).

■ Texas law also recognizes that "an abutting property owner possesses an easement of access which is a property right ... and that diminishment in the value of property resulting from a loss of access constitutes damage [under the Texas Constitution]." *DuPuy v. City of Waco*, 396 S.W.2d 103, 108 (Tex.1965). The supreme court later established that property is damaged within the meaning of the constitution "when access is materially and substantially impaired even though there has not been a deprivation of all reasonable access." *City of Waco v. Texland*

*Corp.,* 446 S.W.2d 1, 2 (Tex.1969). Although neither *DuPuy* nor *Texland* involved a situation where the property owner's land was actually taken, the same rules apply in condemnation proceedings as well. *State v. Heal,* 917 S.W.2d 6, 9 (Tex.1996).

■■■ The method for measuring damages resulting from impaired access is the same as for severance damages—diminishment in the value of the landowner's property. *See Texland,* 446 S.W.2d at 2. The cost to restore property to its pre-taking condition is admissible to prove the probable diminution in fair market value of the remainder immediately after the taking. *Spindor v. Lo–Vaca Gathering Co.,* 529 S.W.2d 63, 65 (Tex.1975).

### B. The City's Arguments

Although the City's position shifts somewhat between their various briefs and oral argument, the City essentially makes four arguments. First, the City contends there is no evidence that Precast's access rights were materially and substantially impaired. Second, the City asserts that Precast's evidence is legally insufficient because it reflects damages resulting from the City's use of property other than Precast's. Third, the City argues Precast's damages are not recoverable as a matter of law because the impairment does not concern access to streets that immediately abut or adjoin Precast's property. Finally, the City claims that Precast's damages are too speculative.

### 1. Law of the Case

■■■ The City argues there is no evidence that Precast's access has been materially and substantially impaired. Whether access rights have been materially and substantially impaired is a question

of law. *Heal,* 917 S.W.2d at 9. In the first appeal, this court held as a matter of law that·Precast's access rights were materially and substantially impaired. *Precast Structures,* 942 S.W.2d at 637. The question is therefore whether, under the "law of the case" doctrine, the City is precluded from challenging this court's earlier holding.

■■■ The law of the case doctrine is the principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages. *Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex.1986). Application of this doctrine is flexible and must be left to the discretion of the court and determined according to the particular circumstances of the case. *Kay v. Sandler,* 704 S.W.2d 430, 433 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). The law of the case doctrine is intended to achieve uniformity of decision and judicial economy and efficiency by narrowing the issues in successive stages of the litigation. *Hudson,* 711 S.W.2d at 630. The doctrine is based on public policy and is aimed at putting an end to litigation. *Id.*

The City asserts that this court's earlier conclusion—that Precast's access rights were materially and substantially impaired—should not be the law of the case because the facts were not fully developed in the first trial. We disagree. In the first trial, the trial court determined that there had been no material and substantial impairment of access, and therefore the court refused to admit evidence showing damages to Precast's remainder property. Precast then presented damage testimony from four witnesses in the form of a bill of exception. The bill shows that the City cross-examined Precast's witnesses and fully argued its position that there was no

impaired access.[1] There can be no dispute that the question of whether Precast's access was materially and substantially impaired was a significant issue both in the trial court and on the first appeal.

We further note that the City did not request a review by the Texas Supreme Court of this court's judgment in the first appeal, but instead proceeded to trial on remand. Where a losing party fails to avail itself of an appeal in the court of last resort, but allows the case to be remanded for further proceedings, the points decided by the court of appeals will be regarded as the law of the case and will not be re-examined. *Lee v. Lee*, 44 S.W.3d 151, 154 (Tex.App.—Houston [1st Dist.] 2001, pet. denied). In the first appeal, this court clearly decided that Precast's access rights had been materially and substantially impaired as a matter of law. *Precast Structures*, 942 S.W.2d at 637. Because the City elected not to appeal that judgment, we see no reason to reconsider it now.

The City also urges us to refrain from applying the law of the case doctrine because of a "substantial change in facts" between the two trials. The City claims that during the second trial, Precast's engineering expert, James Howard, admitted for the first time that Precast's ingress and egress were the same both before and after the taking.[2] The testimony on which the City relies, however, is nothing more than Howard recounting a statement made in a report he prepared on January 4, 1995, over a month before his testimony was recorded for the first trial's bill of exception. Thus, this allegedly new "fact" was already in existence and known to the City at the time of the first trial.

Moreover, Howard's "admission" is not inconsistent with his earlier testimony nor this court's original holding. In the bill of exception, Howard testified that although a new gate had been built to replace the eliminated exit, the location of the new exit would create a dangerous situation because trucks would have to drive closer and more frequently by areas where construction was ongoing. This court summarized the situation by stating that the City's elimination of the old exit "created a situation making access extremely difficult and dangerous," requiring that Precast "relocate some of its equipment in order to safely operate the special trucks." *Precast Structures*, 942 S.W.2d at 637. We find that there has been no substantial change of facts to justify a departure from the law of the case doctrine. Therefore, we conclude that this court's prior holding that Precast's access rights were materially and substantially impaired is the law of the

---

1. The City erroneously states it did not cross-examine Precast's witnesses while Precast was creating its bill of exception. A review of the bill shows that two of the witnesses were cross-examined, but this portion of their testimony was not requested and therefore not transcribed by the court reporter.

2. The relevant portion of Howard's testimony is as follows:·

Q: It's the January report. You then examined basically the effect of the taking of losing this exit at this location here, and having to use that at this intersection?

A: I believe that's—Yes. In that January 4th report.

Q: All right. Now, as far as just what the City took with this exit here being located back on to Tavenor; is that not what happened?

A: Yes.

Q: Did you then conclude that that exit provided ingress and egress as good as the gate that was subsequently lost from the property?

A: Yes, I did.

case. We reject the City's arguments to the contrary.

### 2. Application of the *Campbell* Rule

 Next, the City argues that Precast's claimed damages are not compensable because they arise solely from the City's use and modification of property acquired from other landowners, not land taken from Precast. As a result, the City contends the *Campbell* rule applies and Precast is precluded from any recovery unless it meets the three qualifications set forth in *Schmidt.* Precast's damages, however, are predicated on the claim that its access has been materially and substantially impaired. Impairment of a property owner's easement to access constitutes damage to a property right that is by itself compensable under the Texas Constitution. *DuPuy,* 396 S.W.2d at 108. The supreme court has affirmed damage awards based on impaired access even where there has been *no* physical taking of the landowner's property. *See Texland,* 446 S.W.2d at 4; *DuPuy,* 396 S.W.2d at 108. As the court states in *Heal,* "we have never considered *Campbell* to preclude recovery for impaired access." *Heal,* 917 S.W.2d at 8. We therefore hold that the qualifications for the recovery of severance damages set forth in *Campbell* and *Schmidt* do not apply to Precast's claim for impaired access damages.[3]

### 3. Abutting or Adjoining Streets

The City asserts that Precast's claimed damages for impaired access are not recoverable because the evidence showed that Precast's damages resulted from the City's use of land that does not abut or front Precast's property. Precast presented testimony at trial that trucks carrying concrete products over a certain length could not turn onto Almeda–Genoa from Clearwood. The City therefore claims that all Precast's alleged damages arise from Precast's inability to access Almeda–Genoa (and therefore Interstate 45), and not from any impaired access to the streets adjoining Precast's property. The damage calculation Howard provided, however, relied on Precast's need to alter the internal structure of the plant so that trucks could enter and exit the property via the new exit supplied by the City. Thus, Precast's damages clearly result from its impaired access to the streets abutting Precast's property. The City's argument is rejected. ·

### 4. Speculative Damages

 Finally, the City argues that Precast's claimed damages are too speculative to permit recovery. We disagree. The City claims that less than one percent of the products Precast produced were of such length as to be affected by the Clearwood project. Precast's president testified that potential customers, such as the Texas Department of Transportation, require successful bidders to supply all of their requirements, regardless of the percentages of products over certain lengths. Thus, the fact that a limited number of Precast's products were over a certain length is irrelevant.

The City further contends that Precast's damages are speculative because they depend on whether Precast could successfully bid on a future project. However, Precast is not claiming lost profits or other damages resulting from a contract that it bid on and failed to get. Rather, Precast's

---

3. To the extent the City contends the evidence failed to establish that Precast's damages were directly attributable to its impaired access, and therefore those damages are subject to the *Campbell* rule, the City has waived any such complaint by failing to raise it in the trial court. *See Knoll,* 966 S.W.2d at 639.

damages presumably represent the probable diminution in the fair market value of its remainder property, as evidenced by the costs to restore that property to its pre-taking condition; that is, a condition in which it had the ability to bid on such contracts. We reject the City's argument that Precast's damages are speculative.

 We find no merit in the City's arguments that Precast's damages are not recoverable as a matter of law. Accordingly, we overrule the City's sole issue.[4]

### V. Sanctions for Frivolous Appeal

In a single cross-point, Precast argues that the City should be sanctioned under Texas Rule of Appellate Procedure 45 for filing a frivolous appeal.[5] Whether to grant sanctions is a matter of discretion, which we exercise with prudence and caution, and only after careful deliberation. *Angelou v. African Overseas Union*, 33 S.W.3d 269, 282 (Tex.App.—Houston [14th Dist.] 2000, no pet.). Although imposing sanctions is within our discretion, we will do so only in circumstances that are truly egregious. *Id.* Where an appellant's argument on appeal fails to convince the court, but has a reasonable basis in law and constitutes an informed, good-faith challenge to the trial court's judgment, sanctions are not appropriate. *General Elec. Credit Corp. v. Midland Cent. Appraisal Dist.*, 826 S.W.2d 124, 125 (Tex.1991) (interpreting former Tex.R.App. P. 84).

Although we disagree with the City's arguments on appeal, the appeal was not frivolous. No sanctions are warranted. We therefore overrule Precast's request for Rule 45 sanctions.

The trial court's judgment is affirmed.

---

**4.** In a letter brief filed over a month after oral argument, purportedly in response to a submission of supplemental authority, the City argues, for the first time, that evidence of Precast's costs to restore its property to its pre-taking condition cannot be used to measure the decrease in market value of Precast's remainder unless Precast first proves that the "cost of cure" is less than the decrease in market value as established by some other means. Because the City failed to raise this argument in either of its pre-submission briefs, the argument is waived. *See Russell v. City of Bryan*, 919 S.W.2d 698, 707 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (noting that this court has discretion whether to deem points waived for briefing inadequacies).

**5.** Rule 45 states, in pertinent part: "If the court of appeals determines that an appeal is frivolous, it may … award each prevailing party just damages." Tex.R.App. P. 45.