The AUSTIN NATIONAL BANK OF
AUSTIN, Texas, Appellant,

v.

CAPITAL LODGE NO. 23, I.O.O.F. OF
AUSTIN, Texas, et al., Appellees.

No. 12628.

Court of Civil Appeals of Texas,
Austin.

Nov. 23, 1977.

John C. Miller, Austin, for appellant.

Hardy Hollers, William R. Travis, Hollers & Travis, Austin, for appellees.

PHILLIPS, Chief Justice.

Appellees brought suit in the court below for a declaratory judgment [1] to construe an option contract involving real estate that had been entered into between appellee Lodge and appellant Bank. Both parties moved for summary judgment and the court granted summary judgment for appellees.

We affirm this judgment.

The property in question is located at 505 Congress Avenue in Austin and is described as the north six feet (6′) of Lot No. 1 and the south twenty feet (20′) of Lot No. 2, Block 56, Original City of Austin, Travis County, Texas, and will be referred to hereafter as the "Flack property."

Appellant Bank originally leased this property on May 7, 1927, for a term of twenty-five years. The lease gave the Bank an option to extend it for an additional twenty-five years at the expiration of the original term, and after that, for an additional term of not less than ten nor more than twenty years. The Bank was granted the right to remove the existing improvements and erect such a building as suited its needs, provided only that at the expiration of the lease a building of good construction of not less than two stories and suitable for mercantile purposes would be left on the premises. It was understood that the Bank would use the premises for its banking business. If, at the expiration of the original term or the renewal terms, the building upon the premises was undivided from the building on the adjoining premises, the Bank was required to sever the joined portion of the building from the other by a partition wall. The improvements made by the Bank would become the property of the lessor at the end of the term or the renewal terms.

On November 6, 1951, the original lease was renewed and extended for a term to begin June 1, 1952 and end May 31, 1977. At that time the property was owned by appellees subject to life estates of Laura A. Bunton and Thomas W. Bunton. All of the provisions of the original lease were incorporated into the renewal lease.

On December 1, 1952, the lease was again extended for a term to begin May 31, 1977 and to end at the death of the survivor of Laura A. Bunton and Thomas W. Bunton.

On January 14, 1953, appellee Lodge entered into an option contract for the sale of the Flack property to the Bank. The contract provided that upon the termination of the life estates, the Bank could exercise its option to purchase the property. The Bank sought the option because it desired to construct substantial improvements upon the property and upon an adjoining tract on which it intended to acquire a fifty-year lease. The purchase price was not established in the contract, except that it was to be not less than $115,000.00 nor more than $170,000.00. The contract provided that if, following the exercise of the option, the parties could not agree upon the purchase price, the price would be determined by arbitration. Each party was to select an arbitrator, and the arbitrators so selected would select a third if necessary. The contract acknowledged that the development planned by the Bank on the property and on the adjoining tract would result in a greater sales price of the property, exclusive of the improvements themselves. The contract specifically stated that the price to be paid would be a consideration in cash equal to, "the then value" of the property.

In 1963 the Bank built a new four-story bank building. The building covered the Flack property, the adjoining portions of Lots Nos. 1 and 2, and all of Lot No. 3, Block 56, Original City of Austin, Travis County, Texas.

Sometime after 1963, the Bank decided to expand again. The Board of Directors concluded that it was economically unsound to enlarge the building built in 1963. Subsequently, it was decided to acquire the lots

1. The suit was brought by authority of Article 2524–1, Vernon's Civil Statutes.

to the north of Lot No. 3 in Block 56 and build the Austin National Bank Tower.

In a series of four purchases occurring in 1969 and 1970, the Bank acquired the north and south halves of Lot No. 4, part of Lot No. 5, and all of Lot 6 in Block 56. Existing buildings on these lots were ultimately razed, and the Austin National Bank Tower was built on the property.

On July 31, 1974, the life estates of the Buntons having expired, the Bank exercised its option to purchase the Flack property. The parties were unable to agree upon the price, and the arbitration process provided for in the contract was instituted. The date of the sale was established as October 18, 1974. Thereafter, the Bank and the Bank's arbitrator took the position that the purchases by the Bank in the years 1969 and 1970 could not be considered by the arbitrators in determining the compensation to be paid to appellee Lodge. The Bank contends that the option contract contemplated the strict use of the "fair market value" standard and that under such standard, sales for "assemblage" could not be considered. The sales to the Bank in 1969 and 1970 were a series of purchases to assemble a single tract for the site of the Austin National Bank Tower.

Because of the Bank's construction of the contract, the arbitrators were unable to agree. The third arbitrator specifically requested that the parties agree upon the standard of value to be used by the arbitrators or submit the question to the proper court.

As we stated above, appellee Lodge brought suit for declaratory judgment seeking construction of the option contract.

Both sides moved for summary judgment, then the trial court granted judgment for appellee Lodge.[2] The judgment specifically instructed the arbitrators to consider the purchases by the Bank of the adjoining property in the years 1969 and 1970 in determining the compensation to be paid appellee. The judgment further instructed the arbitrators to consider those sales along with other relevant evidence of probative value that would be considered by ordinary prudent and knowledgeable businessmen in the sale of the Flack property to the Bank.

Appellant Bank is before this Court on two points of error; namely, the error of the court in not rendering a judgment containing a statement of the standard of value to be applied by the arbitrators and the error of the trial court in not finding that fair market value is the valuation standard to be applied.

The Bank apparently contends that the option contract contemplates the standard of valuation to be fair market value, and that if such a standard is used, the purchase price of the lots acquired immediately to the north of the subject property cannot be considered, and further, that in determining market value "assemblage sales" cannot be considered.

■ The law of this State contemplates that a written instrument, not assailed as being ambiguous, must be interpreted to carry out the intentions of the parties. The instrument must be considered as a whole and given its reasonable and probable meaning. *City of Pinehurst v. Spooner Addition Water Company*, 432 S.W.2d 515 (Tex.1968).

In the case at bar, the Bank was given an option to purchase the Flack premises for a

2. The trial court found that:

". . . the parties intended that the compensation be determined as it would be in a private sale between these same parties of the particular land involved with due consideration given to all matters that would be considered by ordinarily prudent and knowledgeable businessmen in such a transaction."

The trial court further found:

". . . that the arbitrators appointed pursuant to the contract shall, in determining the compensation to be paid Plaintiffs, take into consideration the sales to The Austin National Bank which occurred in 1969 and 1970 . . . along with all other relevant evidence of probative value that would be considered by ordinarily prudent and knowledgeable businessmen in a sale of the property from Plaintiffs to Defendant."

**950**

consideration equal to the *then value* of the Flack premises. The consideration to be paid by the Bank to the Lodge for such property was to be not less than $115,000.00 and not more than $170,000.00, and the tract of land was to be appraised exclusive of any improvements that the Bank had caused to be placed on the property. The date of valuation agreed upon by the parties was October 18, 1974.

■ The word "value" means market value when used without qualification. Both terms are used interchangeably and both are synonymous with actual value and salable value. *Bryant v. Stohn*, 260 S.W.2d 77 (Tex.Civ.App. Dallas 1953, writ ref'd n. r. e.). The word "value" implies sales value as opposed to intrinsic value or value to a particular person. Neither individual needs nor the needs of the parties should be considered. It is not speculative value or value derived from the necessitous circumstances of the buyer or seller. It is the amount that could be obtained at private sale and not at a forced sale by one who wishes to sell, but is not obligated to sell, and is bought by one who wishes to buy it, but is under no obligation. Further, use of the word "then" indicates time. It means the market value of the property at the time of valuation agreed upon by the parties. *See generally City of Pinehurst v. Spooner Addition Water Company, supra.*

■ Value or market value must, of necessity, be determined upon the basis of the uses for which the particular property is suited and the most profitable use to which it can be put. In this regard, it is usually said that the best evidences of value are recent comparable sales in the area. Therefore, in Texas, as well as in other jurisdictions, sales of land that are near in time and involve land in a similar location and are of similar character and improvements may be received in evidence in determining the value of the land in question. Nearness in time, similarity in location and character are matters left to the discretion of the trial court. See 2 McCormick & Ray, *Texas Law*

*of Evidence* § 1524 (1956); *Board of Regents of The University of Texas System v. Puett*, 519 S.W.2d 667 (Tex.Civ.App. Austin 1975, no writ). The only limitation to allowing evidence of sales of similar property as evidence of value is that the sale not be a forced sale.

■ Here, there is no evidence that the purchases of property by the Bank in 1969 and 1970 were the result of duress or so dissimilar in location and character so as to be inadmissible. On the contrary, the sales resulted from arm's length transactions and were of property in the same location. Furthermore, the judgment is not unduly vague or imprecise in stating the method of determining valuation.

Consequently, given the wording of the contract before us, aided by the rules of construction set out above, we are of the opinion that it was the intention of the parties for the market value to be determined by taking into consideration relevant evidence of value, including comparable sales in the vicinity. Under these criteria, evidence of the sales of the lots immediately to the north and adjoining the subject property should be admitted.

The judgment of the trial court is affirmed.

Affirmed.