TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00245-CV






Ruth Atkinson, Guardian of the Person and Estate of


Oscar H. Siegmund, Jr., Deceased, Appellant



v.



Seminole Pipeline Company, Appellee






FROM THE DISTRICT COURT OF LEE COUNTY, 335TH JUDICIAL DISTRICT


NO. 9977, HONORABLE NORMAN LANFORD, JUDGE PRESIDING 






 This appeal concerns a pipeline condemnation suit. In 1992, appellee Seminole Pipeline
Company ("Seminole") sought to acquire the right to lay an additional high-pressure natural gas pipeline
in a non-exclusive, single line easement which it had previously established in 1981 over land owned by
appellant Oscar H. Siegmund, Jr. (1) The parties were unable to reach an agreement on just compensation,
and the issue of damages was tried before a jury. On Seminole's motion, the trial court rendered judgment
non obstante veredicto ("judgment n.o.v.") and the jury verdict was modified accordingly. It is from this
judgment n.o.v. that appellant appeals. Concluding that appellant's points of error are unpersuasive, we
will affirm the judgment n.o.v. of the trial court.

BACKGROUND

 Seminole owns and operates two common-carrier natural gas liquid pipelines running
through Texas from Gaines to Mont Belvieu. The first pipeline was constructed in 1981; the second
pipeline, constructed in 1992, is the subject of this litigation. The scope of Seminole's 1992 project
extended from Gaines near the border of New Mexico to Mont Belvieu near the Gulf Coast, and required
the acquisition of over 500 miles of right-of-way easements from landowners across Texas.

 Appellant owned a 118.75-acre tract of farm and pasture land in Lee County. On April
7, 1981, appellant conveyed a fifty-foot wide easement to Seminole for the operation of a single pipeline. 
The easement traversed the tract across the southern tip for a distance of 73.88 rods or 1219.02 feet (one
rod equals 16.5 feet). About one acre of land was situated to the south of the easement, and the remainder
was situated to the north. In connection with the easement and underground pipeline, there were no fences
or above-ground appurtenances interfering with appellant's farming and ranching operations on the entire
tract. In addition to the 1981 Seminole pipeline, three other underground pipelines existed before the
pipeline at issue in this cause. 

 Seminole decided it needed a second pipeline from Gaines to Mont Belvieu to be located
wholly within the existing easement and parallel and immediately adjacent to Seminole's first underground
pipeline. In 1992, Seminole attempted to acquire the rights to operate the second pipeline through
negotiations with appellant. Because negotiations were unsuccessful, Seminole exercised its eminent
domain authority and took the property. 

 Pursuant to the Texas Property Code, special commissioners were appointed to assess
appellant's damages as a result of the taking. Seminole's expert, David Oberrender, appraised the
damages at $2598. The special commissioners assessed total damages in the amount of $4751. Appellant
challenged the decision of the commissioners by appealing to the district court.

 At trial, appellant claimed remainder damages of $40,500. Appellant's expert, George
Reed, assessed the value of the taking at $199,476. Reed's appraisal did not include any remainder
damages as well as additional construction and trespass damages claimed by appellant. By its answers to
the special issues submitted, the jury found that the decrease in the market value of the permanent
easement, immediately before and immediately after the taking was $991; that the decrease in the market
value of the temporary construction easement immediately before and immediately after the taking was
$475; that the decrease in market value of the remainder immediately before and immediately after the
acquisition of the permanent easement and the temporary construction easement was $24,600; that
Seminole trespassed on that portion of the estate lying outside of the temporary construction easement; and
that the amount of damages resulting from the trespass was $5000. Seminole moved for judgment n.o.v.
on two separate grounds; however, the trial court only sustained the motion with regard to the sufficiency
of the evidence on the decrease in market value of the remainder. 

 In granting Seminole's motion, the trial court modified the jury's verdict of $24,600 in
response to Special Issue Number 3 and substituted Oberrender's appraisal of $1600 as the decrease in
value of the remainder immediately before and immediately after the acquisition of the permanent easement
and the temporary construction easement. Judgment was rendered accordingly and it is this judgment that
forms the basis of the instant appeal. There is no question raised as to the right of Seminole to take the
property or as to the procedure followed. The only question before us concerns the market value of the
remainder as a consequence of the taking. Appellant asserts that the court erred in (1) rendering judgment
n.o.v. because there was sufficient evidence of probative force to support the jury's findings on all special
issues; and (2) in excluding the comparable sales testimony of appellant's expert regarding sales of
easement rights in established pipeline corridors. 


STANDARD OF REVIEW

 Texas Rule of Civil Procedure 301 provides for a judgment n.o.v. in such instances in which
a directed verdict would have been proper. We will uphold a trial court's judgment n.o.v. only if there is
no evidence to support the jury's verdict. Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 227 (Tex.
1990); Fisher v. Evans, 853 S.W.2d 839, 841 (Tex. App.--Waco 1993, writ denied). If more than a
scintilla of evidence exists supporting the jury's verdict, we will reverse a judgment n.o.v. Mancorp, 802
S.W.2d at 228. In determining whether more than a scintilla exists, we review only the evidence supporting
the jury's verdict and disregard all evidence and inferences to the contrary. Id. at 227. Thus, we must
consider the evidence and inferences as they tend to support the verdict and not with a view toward
supporting the judgment. Id. at 228. More than a scintilla of evidence exists if the record reveals some
probative evidence to support the verdict, "no matter how small." Ellis County State Bank v. Keever,
888 S.W.2d 790, 801 (Tex. 1994) (emphasis added). 


DISCUSSION

a. The Sufficiency of the Evidence

 We first address appellant's challenge to the judgment n.o.v. based on the sufficiency of
the evidence to support the jury's verdict. Appellant asserts that the record contains ample evidence of
probative force to support the jury's findings on all special issues. Although Seminole's motion contained
eighteen numbered paragraphs, it asserts the single independent ground that there was no evidence, or
insufficient evidence to support the jury's findings on each of the issues presented. Because the trial court
only sustained the motion with regard to issue number three, we shall limit our review to consideration of
the facts regarding that issue. 

 The November 14, 1995 order of the trial court granted the motion with regard to Special
Issue Number 3 which provided the following:


Find from a preponderance of the evidence the decrease, if any in the market value of the
Remainder on November 17, 1992, immediately before and immediately after the
acquisition of the Permanent Easement, and the Temporary Construction Easement.



The jury answered with an award of $24,600. However, pursuant to the motion for judgment n.o.v., the
court modified the jury award on this issue to $1600.

 With regard to Special Issue Number 3, the only evidence presented in support of
appellant's claim for remainder damages was the testimony of Ruth Atkinson, the landowner. Although
appellant presented Reed's expert testimony on the issue of damages generally, Reed specifically declined
to testify regarding damages to the remainder. Seminole presented its own expert who testified that any
such damages to the remainder did not exceed $1600. Seminole's main contention in its motion for
judgment n.o.v. was that the testimony of Atkinson, alone would not support the jury verdict of $24,600. 

 Atkinson testified that Siegmund had primarily used the property for raising cattle and that
such use had continued under her ownership. She opined that the land outside the easement, the
remainder, was adaptable for use as rural homesites. The remainder property had electricity, telephone
service, drinkable ground water, and road frontage. Atkinson stated that to her knowledge, there were
no legal impediments to developing the land as rural homesites except for surveying and filing plats with the
county. Although a current market did not exist for such home-sites, she testified that there could be a
demand for the property if it were subdivided. This speculation was based on a growing market for similar
sites throughout the county. It was her opinion that the highest and best use of the easement was, and has
been since 1981, for the placement of additional pipelines and that for the remainder, the best use was for
subdivisions. 

 Seminole's expert, David Oberrender, testified that the highest and best use for the
property that had been taken was its use in conjunction with the property on either side of the easement
as pasture land. He further testified that damages to the remainder were limited to construction damages
in the vicinity of the easement since the subject pipeline was the fifth underground pipeline to be placed on
the property. He stated that any damages to the remainder due to pipeline installations resulted from
installations prior to 1992. His appraisal of the compensation due appellant for the decrease in value of
the remainder was $1600.

 The ultimate question in determining the value of the property remaining after condemnation
is "one of proof as to market value and depreciation in market value, rather than to abstract questions as
to what may or may not be considered by the [fact finder] in assessing damages." State v. Carpenter, 89
S.W.2d 194, 199 (Tex. 1936). The proper measure of damages to the remainder is the difference in the
market value of the remainder immediately before and after the taking. Taub v. City of Deer Park, 882
S.W.2d 824, 827 (Tex. 1994). "Market value" is defined ordinarily in terms of what the property would
bring in a transaction between a willing seller and a willing buyer. State v. Carpenter, 89 S.W.2d at 202.

 In condemnation cases, the jury may select from the testimony on the question of value and
set the value at any amount between the highest and lowest expressed by the experts. Central Power &
Light Co. v. Martinez, 493 S.W.2d 903, 908 (Tex. Civ. App.--Corpus Christi 1973, no writ); Hester
v. State, 497 S.W.2d 501, 505 (Tex. Civ. App.--El Paso 1973, writ ref'd n.r.e.) (emphasis added). We
recognize that landowners may testify as to the value of their property by merely stating that they know
the land and its market value; however, landowner testimony as to the damage to the land and consequent
depreciation in value, must be based on reasonable information. See e.g., Lo-Vaca Gathering Company
v. Moore, 403 S.W.2d 161 (Tex. Civ. App.--Austin 1966, no writ) (witnesses based their testimony on
reasonable information consisting of factual data and expert opinions). In the instant case, the landowner
provided opinion testimony concerning damage to the remainder property. However, appellant failed to
present any expert testimony regarding remainder damages. The only testimony from appellant regarding
the price the remainder property would bring in a transaction between a willing seller and a willing buyer,
was opinion testimony provided by Atkinson herself. There was no specific testimony on how the
installation of the underground pipeline would affect the value of the remainder. Similarly, there was no
probative evidence presented of affirmative steps that had been taken to subdivide the property for
residential use.

 Moreover, Atkinson specifically stated in her testimony that she had no intention of
developing the property as a subdivision. She further stated that the property has been continuously used
as farm and pasture land. Twice under oath, Atkinson valued the entire 164 acre tract of property at
$157,000. These valuations were made both before and after the taking. Her value testimony indicated
that no damage was suffered by the remainder of the property abating the easement. Furthermore, we note
that Oberrender valued the remainder at $163,968 before the taking and at $162,368 after the taking. 
Atkinson and Oberrender testified that any damages to the remainder due to pipeline installations resulted
from installations made prior to the subject pipeline. One claiming damages to land must show the nature
of the damage, the effect upon various portions of the tract, and the relationship of the same to market
value. A mere conclusion as to market value is insufficient for this purpose. Tennessee Gas &
Transmission Co. v. Zirjacks, 244 S.W.2d 837, 838 (Tex. Civ. App.--San Antonio 1951, writ dism'd)
(evidence consisted of unexplained opinion on the before and after value and no evidence on the cause for
the reduction). 

 Following a careful review of the entire record, we conclude that appellant's lack of expert
testimony creates an absence of legally sufficient evidence in support of the jury's verdict. Atkinson's
testimony constituted no evidence of the remainder value and thus, a directed verdict would have been
proper. See id. The trial court did not err in granting Seminole's motion for judgment n.o.v. Accordingly,
we overrule appellant's first point of error. 


b. The Comparable Sales

 Appellant also asserts that the trial court erred in excluding the comparable sales testimony
of Reed with respect to sales of easement rights in established pipeline corridors. When reviewing the trial
court's ruling on the admissibility of sales offered into evidence as comparable sales, we will determine
whether the court abused its discretion in excluding such evidence. Austin Natl. Bank of Austin v.
Capital Lodge, 558 S.W.2d 947, 950 (Tex. Civ. App.--Austin 1977, no writ); Queen City Land Co.
v. State, 601 S.W.2d 527, 530 (Tex. Civ. App.--Austin 1980, writ ref'd n.r.e.). We will consider and
determine whether the trial court acted without reference to any guiding rules and principles. See
Craddock v. Sunshine Bus Lines, 133 S.W.2d 124, 126 (Tex. 1939).

 In the instant case the trial court excluded evidence of ten of the twelve comparable sales
presented by appellant. The court excluded sales six through eleven because they occurred at least ten
years prior to the November 17, 1992 date of the taking and were too remote in time compared to the date
of the taking. The court excluded sales one, two, four through seven and eight through ten because they
were sales of easements across property which the trial court noted was of a dissimilar nature. Further,
the trial court noted that these sales were of property situated within an area of concentrated petrochemical
activity close to the Gulf Coast, unlike the subject property located in central Texas. 

 Comparable sales are reliable when they occur close in time to the taking and when the
property is local to the property condemned. See United States v. 8.41 Acres of Land, 680 F.2d 388,
395 (5th Cir. 1982), cert. denied, 479 U.S. 820 (1986). Based on a review of the record, we cannot
conclude that the trial court abused its discretion in excluding ten of the twelve sales offered as comparable. 
The second point of error is overruled. 

 The judgment of the trial court is hereby affirmed.



 

 Mack Kidd, Justice

Before Chief Justice Carroll, Justices Jones and Kidd; Chief Justice Carroll not participating

Affirmed

Filed: April 24, 1998

Do Not Publish
1. During the pendency of these proceedings, Oscar H. Siegmund, Jr. died testate, leaving Ruth
Atkinson as Independent Executrix and devisee of his estate. Atkinson represented the interests of the
Estate throughout the proceedings now made subject of this appeal.



g. Her value testimony indicated
that no damage was suffered by the remainder of the property abating the easement. Furthermore, we note
that Oberrender valued the remainder at $163,968 before the taking and at $162,368 after the taking. 
Atkinson and Oberrender testified that any damages to the remainder due to pipeline installations resulted
from installations made prior to the subject pipeline. One claiming damages to land must show the nature
of the damage, the effect upon various portions of the tract, and the relationship of the same to market
value. A mere conclusion as to market value is insufficient for this purpose. Tennessee Gas &
Transmission Co. v. Zirjacks, 244 S.W.2d 837, 838 (Tex. Civ. App.--San Antonio 1951, writ dism'd)
(evidence consisted of unexplained opinion on the before and after value and no evidence on the cause for
the reduction). 

 Following a careful review of the entire record, we conclude that appellant's lack of expert
testimony creates an absence of legally sufficient evidence in support of the jury's verdict. Atkinson's
testimony constituted no evidence of the remainder value and thus, a directed verdict would have been
proper. See id. The trial court did not err in granting Seminole's motion for judgment n.o.v. Accordingly,
we overrule appellant's first point of error. 


b. The Comparable Sales

 Appellant also asserts that the trial court erred in excluding the comparable sales testimony
of Reed with respect to sales of easement rights in established pipeline corridors. When reviewing the trial
court's ruling on the admissibility of sales offered into evidence as comparable sales, we will determine
whether the court abused its discretion in excluding such evidence. Austin Natl. Bank of Austin v.
Capital Lodge, 558 S.W.2d 947, 950 (Tex. Civ. App.--Austin 1977, no writ); Queen City Land Co.
v. State, 601 S.W.2d 527, 530 (Tex. Civ. App.--Austin 1980, writ ref'd n.r.e.). We will consider and
determine whether the trial court acted without reference to any guiding rules and principles. See
Craddock v. Sunshine Bus Lines, 133 S.W.2d 124, 126 (Tex. 1939).

 In the instant case the trial court excluded evidence of ten of the twelve comparable sales
presented by appellant. The court excluded sales six through eleven because they occurred at least ten
years prior to the November 17, 1992 date of the taking and were too remote in time compared to the date
of the taking. The court excluded sales one, two, four through seven and eight through ten because they
were sales of easements across property which the trial court noted was of a dissimilar nature. Further,
the trial court noted that these sales were of property situated within an area of concentrated petrochemical
activity close to the Gulf Coast, unlike the subject property located in central Texas. 

 Comparable sales are reliable when they occur close in time to the taking and when the
property is local to the property condemned. See United States v. 8.41 Acres of Land, 680 F.2d 388,
395 (5th Cir. 1982), cert. denied, 479 U.S. 820 (1986). Based on a review of the record, we cannot
conclude that the trial court abused its discretion in excluding ten of the twelve sales offered as comparable. 
The second point of error is overrul