The BOARD OF REGENTS OF the UNI-
VERSITY OF TEXAS SYSTEM,
Appellant,

v.

Nelson PUETT, Jr., et al., Appellees.

No. 12122.

Court of Civil Appeals of Texas,
Austin.

Feb. 26, 1975.

Rehearing Denied March 12, 1975.

Fred B. Werkenthin and Dennis R. Reese, Small, Craig & Werkenthin, Austin, for appellant.

Hawthorne Phillips and Robert W. Norris, Phillips & Norris, and Paul D. Jones, Johnson, Jones & Sheppard, Austin, for appellees.

O'QUINN, Justice.

The Board of Regents of the University of Texas brought this action in eminent domain to condemn a town tract on Wichita Street in Austin, owned by Nelson Puett, Jr., immediately north of the main campus.

Puett filed his objections to the award of the special commissioners in the county court at law, where Joe Lundell later filed an intervention claiming that on the date of taking he was the owner of a valid leasehold interest in the property.

Upon hearing, the trial court entered judgment for Puett, based upon the jury's finding that the market value of the property was $173,000, or $9.25 per square foot, and instructed a verdict for Lundell in the sum of $3,692.45.

The Board of Regents has appealed and asserts error as to both awards by the trial court. The Board brings thirty-seven points of error, in the main directed to admission of testimony offered by Puett to show comparable sales; to the trial court's refusal to permit examination of Puett and an expert witness regarding an earlier sale to Puett of property in the same block in which the condemned lot is located; and to refusal of the court to permit examination of Puett concerning the option price under which he acquired the subject property. The Board also claims error in permitting Lundell to intervene, after not being a party to the administrative proceedings before the special commissioners.

We will sustain points under which error is claimed because testimony relating to a prior sale to Puett of nearby property was excluded and points directed to the intervention of Lundell. We will reverse the judgment of the trial court and remand the cause for new trial in conformity with this opinion.

The parties are agreed that the date of taking was September 19, 1969, and that at that time the highest and best use of the property was for some type of housing for students, such as a dormitory, or for a fraternity or sorority house. On the date of taking the property was being used as an unpaved parking lot.

Both the condemnor and the landowner introduced evidence of value through the testimony of expert witnesses. The expert witness in behalf of the Board testified that in his opinion the Puett property was worth $121,680, or $6.50 per square foot. The witness' opinion was based on comparable free market sales with prices ranging from $2.56 to $6.91 per square foot.

Two witnesses, qualified as experts, testified in behalf of Puett. One witness testified that the fair market value of the property was $196,560 or $10.50 per square foot. His opinion was based on two groups of sales, one group of four sales on San Antonio Street, east of the main campus, which for convenience is referred to as The Castilian sales, and the other group being four sales south of the campus, near the Dobie Center. Puett's second witness based his opinion on the same sales used by the first witness, as stated in testimony given out of the hearing of the jury, and on his general knowledge of the area, as he testified before the jury.

Under points twenty-five and twenty-six the Board claims error of the trial court in not permitting the Board on cross examination of an expert witness for Puett and on cross examination of Puett to make inquiry concerning a sale in August of 1966 by Robert L. Hunter and others to Puett of property located at 2612 Wichita Street, removed by only one lot from the subject property.

When he acquired the property in 1966 Puett paid $27,500, or $4.40 per square foot. At the time of purchase an old house, then rented as a rooming house to four or five male students, was on the lot and the house contained some of the furniture which was included in the sale. Puett bought the property with the thought of tearing down the improvements later, acquiring adjoining land, and constructing a housing project designed for occupancy by girls attending the University. Use of the improvements as a rooming house contin-

ued about one year and thereafter the house and lot were acquired by the University.

■ When the Board sought to question the witness and Puett on cross examination, objection was made on the grounds (1) that the property was improved, unlike the tract under condemnation, and (2) all property in that area was under threat of condemnation. The trial court ruled that questioning based on that sale would not be permitted.

At the time Puett purchased the property he was unaware of any threat of condemnation in that area and had no reason to believe the property would be the subject of condemnation any time in the foreseeable future. The record does not disclose whether the sellers knew of any threat of condemnation. There was no showing that a threat of condemnation affected the sale price of the tract Puett bought in 1966.

■ The Board contends that it was proper on cross examination to question the expert witness, and Puett himself, regarding the 1966 sale to Puett to test the credibility of the witnesses or to lay a predicate for impeachment. We sustain this contention.

Puett's first expert witness testified that property located within one block of the perimeter of the University campus sold for a premium and that, by reason of this situation, only sales within this favored outer periphery could be used as a guide to determine the market value of the property being taken in condemnation, which also lay within this premium band. In keeping with his testimony, the expert for Puett testified to sales in the area of The Castilian, within one block west of the campus, and in the neighborhood of the Dobie Center, within one block south of the campus, on the theory that such sales were of property comparable to the property taken.

The Board contends that the sales in the neighborhood of the Dobie Center and in

the area of The Castilian, with values ranging as high as $11.77 per square foot, "were the result of forced purchases, more favorable zoning, proximity to high pedestrian and vehicular count areas," and did not result by reason of being within one block of the campus.

The Board sought by cross examination of Puett and his expert witness to show the fallacy of the "magic ring" theory, since both the property taken and the property bought by Puett in 1966 were within one block of the campus on the north side, yet the purchase in 1966, only three years prior to the date of taking, was at a rate of only $4.40 per square foot, or a total price of $27,500, including land and improvements.

The record shows that the trial court excluded the questioning of the witnesses concerning the 1966 purchase because that property was improved, whereas the land taken was unimproved. Denied the right to cross examine the witnesses, the Board argues it was unable to demonstrate to the jury that the expert and the landowner were in the inconsistent position of saying that, even within the premium periphery of the campus, an unimproved tract was worth $10.50 per square foot, more per square foot than an improved tract located in the same block which the landowner, three years earlier, had bought for $4.40 per square foot.

In this situation we are not dealing with the rule that prices paid for improved lots and the values assigned in recent sales are not admissible to show value of unimproved property being taken because such sales do not meet the test of similarity. City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808, 816 (1954). In *Cannizzo* the Supreme Court pointed out, however, that inquiry into detail or mental processes by which a witness arrives at his conclusions is proper on *cross examination* to test credibility and for impeachment purposes.

The trial court appears to have entertained the belief that evidence of the 1966 sale during cross examination of the landowner and his expert was properly excluded under the decision of the Supreme Court in State v. Chavers, 454 S.W.2d 395 (Tex.Sup.1970). Although the expert may take into consideration sales of improved property, in his effort to arrive at his personal opinion of the market value of unimproved condemned land, ". . . neither expert nor layman may testify *on direct examination* to the facts of that sale." (Emphasis supplied) (454 S.W.2d 397)

In testing the credibility of the expert's stated opinion, that unimproved property was worth more per square foot than improved property adjacent to the unimproved, the facts of a recent sale of the improved property may be inquired into on *cross examination,* as the Board sought to do in this case.

We hold that it was error for the trial court not to permit inquiry about the 1966 sale on cross examination of the expert witness and the landowner.

■ Under its twenty-eighth point, the Board urges error of the trial court in failing to strike the intervention of Lundell, a lessee operating a parking lot on the property taken, because Lundell was not a party to the original eminent domain proceedings prior to reaching the trial court, and the court therefore was without jurisdiction of Lundell's claim.

We sustain this point. Jurisdiction of the trial court in condemnation proceedings is appellate, and although the trial is *de novo,* it is limited to the issues and the parties involved in the administrative proceeding before the special commissioners, the administrative tribunal from which the court's jurisdiction derives. Texas Electric Service Co. v. Perkins, 23 S.W.2d 320, 323 (Tex.Comm'n App.1930, judgment adopted). The trial court is without power to enlarge the subject matter of the cause and is

limited to review of only such matters as were properly before the commissioners. Stirman v. City of Tyler, 443 S.W.2d 354, 359 (Tex.Civ.App. Tyler 1969, writ ref. n. r. e.).

Article 3266(6), Vernon's Ann.Civ.St., which grants "either party" to a condemnation proceeding the right of appeal to the trial court has been construed to mean any party dissatisfied with the decision of the special commissioners. State v. Davenport, 417 S.W.2d 337, 340 (Tex.Civ.App. Tyler 1967, writ ref.). In this case Lundell was not a party and did not participate in the proceedings before the commissioners, and sought to assert his claim for the first time after the matter was on appeal. A claimant not joined as a party and not voluntarily joining in the proceedings before the commissioners is not within the jurisdiction of the administrative tribunal, and any attempt to deal with his interest thereafter on appeal is ineffectual. Lo-Vaca Gathering Company v. Earp, 487 S.W.2d 789 (Tex.Civ.App. El Paso 1972, no writ).

The trial court was without jurisdiction to entertain Lundell's claim, and award of damages to him was a nullity.

In view of another trial, we will dispose of other points of error, which we will overrule, assigned by the Board and not considered above.

■ The Board contends that the trial court erred in admitting, as comparable sales, three sales of property located on Whitis Avenue, between 20th and 21st Streets, which is south of the property being taken and on the opposite side of the main campus. The Board also assigns as error the subsequent failure of the trial court to strike, and to instruct the jury to disregard, the testimony of the witness who testified to the sales.

These three sales were made to developers of the Dobie Center, a high-rise apartment and commercial complex erected on Whitis Avenue and across the street from the three tracts. One lot was purchased by the developers for $11.42 per square foot; two lots were purchased for $8.14 per square foot; and another lot was purchased from Dr. Ben Eppright for $11.77 per square foot. These four lots are the present location of an above-ground parking facility serving the Dobie Center.

The Board contends that the sales were not a reflection of the true market value of the properties because the purchases were made under economic duress, and that the sales therefore are not admissible to prove the market value of the condemned tract. The Board argues that the sales were not of property offered for sale by one who desires, but is not obliged, to sell, and which is bought by one who is under no necessity of buying. State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194 (1936); Phelps v. State, 157 S.W.2d 955 (Tex.Civ.App. Amarillo 1942, no writ).

In support of its contention, the Board draws attention to the testimony of Sam Dunnam, who represented the Dobie Center development group in these purchases. Called by appellant, Dunnam testified that he was instructed by his principals to ". . . keep on laying money on the table . . ." until the owners of the three parcels agreed to sell; that acquisition of the lots was necessary to protect a loan commitment of over eight million dollars to construct Dobie Center; that the cost of placing the parking beneath the Center was prohibitive; and that the development group did not want to place the parking above ground within the Center.

In addition, Dr. Eppright's wife testified under cross examination that she and her husband did not particularly care to sell their property, which sold for $11.77 per square foot, but they were approached by Mr. Dunnam, who ". . . seemed very anxious and he finally I think gave us the impression that we were the stumbling block for the acquisition of what was nec-

## 672

essary so the Dobie Center could go through and that he had to have this piece of property."

In contrast, one of Puett's appraisal witnesses, through whose testimony these sales were introduced, testified that there were other properties available in the general area for purchase by the developers. He also testified that the parking facilities, as an alternative to the purchases in question, could have been placed above ground within the structure, and gave as examples similar buildings in Austin utilizing this structural design.

We are of the opinion that the trial court did not err in admitting testimony regarding these sales, and that the court was correct in overruling the Board's motion to strike, and to instruct the jury to disregard, the testimony. It was not mandatory that the developers of Dobie Center purchase the lots in question. Other reasonable alternatives were available. The developers could have chosen to purchase other land, or they could have changed the structural plans to accommodate above-ground parking within the building. In the exercise of business judgment, the developers may have paid a premium for the additional lots, over land less favorably located, or to avoid an unwanted change in structural design. But the purchases were not thereby rendered involuntary sales under duress as argued by appellant.

 The Board has also challenged other sales in The Castilian area west of the campus as not being comparable. In our opinion the court did not err in admitting, as comparable sales, sales of four lots being assembled for the purpose of building The Castilian, a high-rise dormitory located on San Antonio Street, one block west of the University. The sale of Lot No. 27 took place in November, 1965, at a price of $5.93 per square foot. Lot No. 28 was sold in December, 1965, for $5.95 per square foot. In December, 1965, Lots 25 and 26, the former fronting on 24th Street, were sold for $10.72 per square foot. The

Board objected to the admission of each of these sales on the basis of remoteness in time, and the objections were overruled.

The date of taking of the condemned property was September 19, 1969, approximately four and one-half years after the sales in The Castilian area. Generally, sales occurring within five years of the date of taking of the subject property may be considered comparable. See Rayburn, Texas Law of Condemnation, Sec. 140(1). Whether a sale offered as comparable is too remote in time to be admissible is left largely to the discretion of the trial court. State v. Childress, 331 S.W.2d 230, 235 (Tex.Civ.App. Eastland 1959, writ ref. n. r. e.); Broesche v. State, 348 S.W.2d 770, 773 (Tex.Civ.App. Houston 1961, no writ). We are of the opinion that none of the sales was too remote in time. Holcombe v. City of Houston, 351 S.W.2d 69, 72 (Tex. Civ.App. Houston 1961, no writ).

 We are of the opinion also that the trial court correctly refused to exclude testimony with respect to the sale of Lots 25 and 26 in The Castilian area, to which the Board objected on the theory the property had commercial uses available to it not reasonably available to the property taken, thereby rendering the sale not comparable.

The Board maintains that the lots front on 24th Street, in the block immediately west of Guadalupe Street, and are classified and zoned for "C"-commercial uses, whereas the condemned property is zoned for "B"-residential uses. The Board argues that this property is rendered more valuable thereby than the land taken.

An appraisal witness for Puett explained why he considered the sale comparable, and why the commercial zoning did not cause these lots to have more value than the condemned property. Despite the difference in zoning, it was the witness' opinion that the highest and best use for both the property offered as comparable and the condemned property was as a site for high-rise student housing.

The discretion of the trial court, in determining whether a sale is sufficiently similar to be admissible, as a circumstance influencing an expert witness in arriving at his opinion of value, is very broad. Texas Electric Company v. Graves, 488 S.W.2d 135, 139 (Tex.Civ.App. El Paso 1972, writ ref. n. r. e.). The objection to this sale, on the basis of lack of similarity, is applicable more to the weight of the evidence than to its admissibility. State v. Hays, 361 S.W.2d 401, 403 (Tex.Civ.App. Dallas 1962, writ ref. n. r. e.). The question of admissibility was within the discretion of the trial court and was not abused. Holcombe v. City of Houston, *supra*.

We have considered the Board's remaining points and find no reversible errors. The points are overruled.

The judgment of the trial court is reversed, and the cause remanded for a new trial consistent with this opinion.

Reversed and remanded.

SHANNON, J., not participating.