Affirmed and Majority and Dissenting Opinions filed December 16, 2004









Affirmed and Majority and Dissenting Opinions filed
December 16, 2004.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00987-CV

____________

 

RICHARD NIP,
A/K/A/ NIP KAM MAN, AND NIP LUNG KWAN, Appellants

 

V.

 

CHECKPOINT
SYSTEMS, INC.,
Appellee

 



 

On Appeal from the 281st
District Court

Harris County, Texas

Trial Court Cause No. 01-39671

 



 

D I S S E N T I N G   O P I N I O N

In their fourth issue, appellants
argue:  AThe evidence is
both legally and factually insufficient to prove essential elements of
Checkpoint=s damages claim, namely the value of AW
Printing had Appellants complied with the Purchase Agreement and the value of
AW Printing on the date of delivery.@  I conclude this issue is dispositive and
warrants rendition of a take-nothing judgment. 
Accordingly, I respectfully dissent.








The evidence
evaluated in light of the charge given. 
In Question 2, the trial court gave the following charge on damages:

What sum of money, if any, if paid now in cash, would
fairly and reasonably compensate Checkpoint Systems, Inc. for its damages, if
any, resulting from [appellants=] failure to comply, if any, with the Purchase and
Sale Agreement?

As used in the question, Aresulting from@ means
that the damage, if any, is a natural, probable, and foreseeable consequence of
the failure, if any, to comply with the agreement.

Do not include in your answer any amount that you find
Checkpoint Systems, Inc. could have avoided by the exercise of reasonable care.

Consider the following element of damage, if any, and
none other.  Do not include interest on
any amount of damages you find.

The difference, if any, between the value of AW
Printing had [appellants] complied with the Purchase and Sale Agreement and the
value of AW Printing as delivered.  The difference in value, if any, shall be
determined as of January 9, 2001.

Answer in dollars and cents for damages, if any. 
(Emphasis added.)

 

Absent an objection to the jury charge, we
review the sufficiency of the evidence in light of the charge submitted.  Wal‑Mart Stores, Inc. v. Sturges,
52 S.W.3d 711, 715 (Tex. 2001); see also City of Fort Worth v. Zimlich,
29 S.W.3d 62, 68B69 (Tex. 2000).  In the present case, Checkpoint objected only
to inclusion of the mitigation instruction in the damages question; it did not
object to any other part of that question.








According to the charge, the jury was to
consider only the difference, if any, between (1) the value of AW Printing if
the Nips had complied with the Purchase and Sale Agreement and (2) the
value of AW Printing as delivered.  This court is not authorized to evaluate the
sufficiency of the evidence under calculations different from those the jury
was instructed to use.  Swank v.
Sverdlin, 121 S.W.3d 785, 802 (Tex. App.CHouston [1st
Dist.] 2003, pet. denied) (citing Larson v. Cook Consultants, Inc., 690
S.W.2d 567, 568 (Tex. 1985)).  A court of
appeals errs when it measures the sufficiency of the evidence against what it
believes to be the correct measure of damages rather than the measure of
damages actually submitted to the jury.  See
Sage Street Assocs. v. Northdale Constr. Co., 863 S.W.2d 438, 447 (Tex.
1993).

Given the calculations the jury was
instructed to use and the absence of evidence to support these calculations,
there is no evidence to support an award of damages for breach of
contract.  Neither Balcombe nor any other
witness testified regarding the value of AW Printing based on compliance with
the Agreement and AW=s value as delivered to Checkpoint,
leaving the jury to guess as to the numbers to use in the calculation required
in the damages question.

As Checkpoint=s counsel conceded
at oral argument, Acompliance@ with the
Agreement means appellants would have disclosed the reduced Gymboree Far East
ordersCactual or forecastCprior to
closing.  Also according to Checkpoint=s counsel,
Checkpoint would then have renegotiated. 
As appellants argued in the trial court, there is no evidence of what
the renegotiated sale price would have been, and there is certainly no evidence
to support the jury=s implicit use of the actual purchase
price of $10.8 million dollars as the figure representing a renegotiated
purchase price.[1]  If no evidence supports the first prong of
the damages questions, a fortiori, no evidence supports the damages
found by the jury in response to the question.








Viewed from a different perspective, the
calculation required by Question 2 involves the use of the same number in the
minuend and the subtrahend, precluding any difference.  Appellants= alleged failure
to comply with the Agreement involved failure to disclose information before
closing.  There is no evidence these
alleged failures caused the value of AW Printing to decline.  Thus, the value of AW Printing would have
been the same regardless of whether the information had been disclosed.  Had the appellants complied, the value of AW
Printing would have been the same as the value of AW Printing as
delivered.  In other words, the value for
the first prong of the damages question is the same as the value for the second
prong, and the difference is therefore zero.

The majority,
however, contends, AA reasonable interpretation of the
instruction is that >the value of AW Printing had [the
appellants] complied= means the value of the contract if no
breach had occurred.@ 
The majority then continues, AIn other words,
the jury was entitled to conclude that if the appellants had complied,
Checkpoint would have received $10.8 million of value.@

The majority takes
the phrase Ahad complied@ and transmutes it
into Ano breach.@  Then, through an act of alchemy, the majority
takes Ano breach@ and transmutes
that term into receipt of the contractual purchase price.

No breach would
have occurred under only two scenarios: (1) if a material adverse change
happened and appellants disclosed it or (2) if no material adverse change
happened and therefore appellants had nothing to disclose.  The majority=s interpretation
comports with the second scenario.  The
second scenario, however, does not comport with the facts of the case.  The majority=s interpretation
also does not comport with the instruction that was given.  See Sage Street Assocs., 863 S.W.2d at
447.

Waiver.  The majority also concludes appellants waived
the argument set forth in issue four. 
First, the majority contends the issue is simply an attack on the
reliability of Balcombe=s methodology and suggests, because this
challenge was not raised in the motion to exclude Balcombe=s testimony, the
issue was not Aproperly preserved.@  I respectfully disagree.








In this court, as
in the court below, appellants clearly separate their no-evidence argument based
on lack of evidence from a no-evidence argument based on the unreliability of
Balcombe=s testimony.  In issue four, appellants are not challenging
the reliability of the data or the methodology Balcombe employed; those
challenges are the subject of issue three.[2]  In issue four, appellants are saying no one
ever provided evidence on the relevant questions, i.e., the two questions
posed in the damages charge.  This is not
an attack on the reliability of Balcombe=s damages
calculations; appellants are instead challenging the jury=s answer to the
damages question based on the absence of testimony providing the
value for AW Printing assuming compliance with the Purchase and Sale Agreement
and the value as delivered.  Balcombe
could have provided those values for the jury, but failed to do so.

In the trial
court, appellants repeatedly argued there was no evidence of damages resulting
from their alleged breach of the Agreement. 
In their motion for a directed verdict, appellants argued, A[T]here is no
evidence that any alternative deal would have gone forward at any particular
lower price.@ 
Appellants contended:

Because we don=t know the price that Mr. Dowd [Checkpoint=s decision maker]
would have agreed to on behalf of Checkpoint and because there is no evidence
of the price [appellants] would have agreed to, there can be no precise measure
of the fair market value received and, therefore, there can be no evidence of
actual damages in this case.








At the charge
conference, appellants objected to submission of any damages question on
no-evidence grounds:  A[T]here is no
evidence that any such breach caused any damages because there is no evidence
that . . . Checkpoint would have lowered the purchase price.@  Appellants further argued, A[T]here is no
evidence of the market value of AW Printing had [appellants] complied with the
purchase and sale agreement, nor is there any evidence of the market value of
AW Printing as delivered on January 9, 2001.@  As a separate objection, appellants argued
there was no reasonable basis in the evidence to calculate damages because
Balcombe=s evaluation was
unreasonable as a matter of law.  Thus,
appellants separated their no-evidence challenge from their reliability
challenge.

As a second ground
for waiver, the majority concludes the argument based on the absence of
evidence of the value of AW Printing if appellants had complied with the
contract by disclosing loss of the Gymboree business Ais not properly
before us because it was not raised in appellants= initial brief@ and Ais not fairly
included within a general sufficiency point focusing on the flaws in expert
testimony.@ 
Again, I respectfully disagree.

In addition to the
caption of issue four in their initial brief in this court, appellants, in the
course of arguing this issue, contend, ACheckpoint . . .
failed to offer any evidence of either the value of AW Printing had Appellants
complied with the Purchase Agreement or of the value of AW Printing as
delivered on January 9, 2001.@  Under the same issue, appellants argue, A[T]he evidence is both
legally and factually insufficient to prove either of the values that the jury
was instructed to determine in Question 2, that is the value of AW Printing had
Appellants complied with the contract and the value of AW Printing as delivered
on January 9, 2001.@  In
a post-submission brief addressing this court=s questions at
oral argument, appellants further explain:

Every one of [appellants=] alleged failures to comply with
the Agreement concerned a failure to disclose various information before
closing.  It is self evident that
[appellants=] alleged failures to disclose
information did not cause the value of AW Printing to decline.  The value of AW Printing would have been the
same regardless of whether this information had been disclosed.  In other words, if [appellants] had complied
with the Agreement by disclosing all information which Checkpoint contends
should have been disclosed, the value of AW Printing would have been the same
as the value of AW Printing as delivered. 
Accordingly, under the instruction given to the jury, Checkpoint, as a
matter of law, had no damages.[3]

 








An appellate court
treats an issue or point as covering every subsidiary question that is fairly
included in the issue or point.  Weingarten
Realty Investors v. Harris County Appraisal Dist., 93 S.W.3d 280, 284 (Tex.
App.CHouston [14th
Dist.] 2002, no pet.); see Tex.
R. App. P. 38.1(e); Stephenson v. LeBoeuf, 16 S.W.3d 829, 843B44 (Tex. App.CHouston [14th
Dist.] 2000, pet. denied).  In addition,
this court has discretion whether to consider the supplementation of an
argument presented in a post-submission brief.  See City of Houston v. Precast Structures,
Inc., 60 S.W.3d 331, 340 n.4 (Tex. App.CHouston [14th
Dist.] 2001, pet. denied) (holding, in case before it, appellant waived
argument presented for first time in post-submission brief, but citing, in
support, Russell v. City of Bryan, 919 S.W.2d 698, 707 (Tex. App.CHouston [14th
Dist.] 1996, writ denied), in which this court observed it has discretion
whether to deem points waived for briefing inadequacies or allow amendment or
rebriefing).

In issue four in
their initial brief, appellants refer three times to the absence of evidence of
the value of AW Printing if appellants had complied.  Appellants= post-submission
brief does not add a new appellate issue; it merely supplements an issue in its
initial brief to this court.  The
argument is properly before the court.

Under
the charge submitted to the jury, Checkpoint had no damages.  Accordingly, I would sustain appellants= issue four and render judgment
Checkpoint take nothing.  I therefore
respectfully dissent.

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment affirmed and Majority and Dissenting Opinions
filed December 16, 2004.

Panel consists of Justices Yates, Anderson, and Hudson.











[1]   Balcombe concluded Checkpoint=s damages were $2,861,000.  He stated he measured damages as the
difference between what Checkpoint expected to receive versus what they
actually did receive.  According to Balcombe,
Checkpoint expected to receive $10,806,000 of value because that is what they
paid.





[2]  Appellants
present seven issues for review.  In
issues one through three, they challenge the legal and factual sufficiency of
the evidence to support the conclusion Checkpoint sustained damages, and did so
in the amount of $2,565,500.  In issue
three, they specifically contend Balcombe=s expert
testimony was so unreliable in six regards that it constituted no
evidence.  In issue four, as set forth
above, they argue the evidence was legally and factually insufficient to
support the two components of damages submitted to the jury.  In issue five, they challenge the legal and
factual sufficiency of the evidence to prove the alleged breach caused all
Checkpoint=s damages.  In
issue six, they challenge the legal and factual sufficiency of the evidence to
support the finding they failed to comply with the Agreement.  In issue seven, they contend the damage award
is excessive and request remittitur.





[3]  Appellants
made essentially the same argument to the trial court in their post-judgment
motion.