JOHN S. ANDERSON, Justice,
dissenting.
In their fourth issue, appellants argue: “The evidence is both legally and factually insufficient to prove essential elements of Checkpoint’s damages claim, namely the value of AW Printing had Appellants complied with the Purchase Agreement and the value of AW Printing on the date of delivery.” I conclude this issue is disposi-tive and warrants rendition of a take-nothing judgment. Accordingly, I respectfully dissent.
The evidence evaluated in light of the charge given. In Question 2, the trial court gave the following charge on damages:
What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Checkpoint Systems, Inc. for its damages, if any, resulting from [appellants’] failure to comply, if any, with the Purchase and Sale Agreement?
As used in the question, “resulting from” means that the damage, if any, is a natural, probable, and foreseeable consequence of the failure, if any, to comply with the agreement.
Do not include in your answer any amount that you find Checkpoint Systems, Inc. could have avoided by the exercise of reasonable care.

Consider the following element of damage, if any, and none other. Do not include interest on any amount of damages you fínd.

The difference, if any, between the value of AW Printing had [appellants] complied with the Purchase and Sale Agreement and the value of AW Printing as delivered. The difference in value, if any, shall be determined as of January 9, 2001. Answer in dollars and cents for damages, if any. (Emphasis added.)
Absent an objection to the jury charge, we review the sufficiency of the evidence in light of the charge submitted. Wal-Mart Stores, Inc. v. Sturges, 52 S.W.3d 711, 715 (Tex.2001); see also City of Fort Worth v. Zimlich, 29 S.W.3d 62, 68-69 (Tex.2000). In the present case, Checkpoint objected only to inclusion of the mitigation instruction in the damages question; it did not object to any other part of that question.
According to the charge, the jury was to consider only the difference, if any, between (1) the value of AW Printing if the Nips had complied with the Purchase and Sale Agreement and (2) the value of AW Printing as delivered. This court is not *760 authorized to evaluate the sufficiency of the evidence under calculations different from those the jury was instructed to use. Swank v. Sverdlin, 121 S.W.3d 785, 802 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (citing Larson v. Cook Consultants, Inc., 690 S.W.2d 567, 568 (Tex.1985)). A court of appeals errs when it measures the sufficiency of the evidence against what it believes to be the correct measure of damages rather than the measure of damages actually submitted to the jury. See Sage Street Assocs. v. Northdale Constr. Co., 863 S.W.2d 438, 447 (Tex.1993).
Given the calculations the jury was instructed to use and the absence of evidence to support these calculations, there is no evidence to support an award of damages for breach of contract. Neither Balcombe nor any other witness testified regarding the value of AW Printing based on compliance with the Agreement and AW’s value as delivered to Checkpoint, leaving the jury to guess as to the numbers to use in the calculation required in the damages question.
As Checkpoint’s counsel conceded at oral argument, “compliance” with the Agreement means appellants would have disclosed the reduced Gymboree Far East orders — actual or forecast — prior to closing. Also according to Checkpoint’s counsel, Checkpoint would then have renegotiated. As appellants argued in the trial court, there is no evidence of what the renegotiated sale price would have been, and there is certainly no evidence to support the jury’s implicit use of the actual purchase price of $10.8 million dollars as the figure representing a renegotiated purchase price.[1] If no evidence supports the first prong of the damages questions, a fortiori, no evidence supports the damages found by the jury in response to the question.
Viewed from a different perspective, the calculation required by Question 2 involves the use of the same number in the minuend and the subtrahend, precluding any difference. Appellants’ alleged failure to comply with the Agreement involved failure to disclose information before closing. There is no evidence these alleged failures caused the value of AW Printing to decline. Thus, the value of AW Printing would have been the same regardless of whether the information had been disclosed. Had the appellants complied, the value of AW Printing would have been the same as the value of AW Printing as delivered. In other words, the value for the first prong of the damages question is the same as the value for the second prong, and the difference is therefore zero.
The majority, however, contends, “A reasonable interpretation of the instruction is that ‘the value of AW Printing had [the appellants] complied’ means the value of the contract if no breach had occurred.” The majority then continues, “In other words, the jury was entitled to conclude that if the appellants had complied, Checkpoint would have received $10.8 million of value.”
The majority takes the phrase “had complied” and transmutes it into “no breach.” Then, through an act of alchemy, the majority takes “no breach” and transmutes that term into receipt of the contractual purchase price.
No breach would have occurred under only two scenarios: (1) if a material adverse change happened and appellants disclosed it or (2) if no material adverse *761 change happened and therefore appellants had nothing to disclose. The majority’s interpretation comports with the second scenario. The second scenario, however, does not comport with the facts of the case. The majority’s interpretation also does not comport with the instruction that was given. See Sage Street Assocs., 863 S.W.2d at 447.
Waiver. The majority also concludes appellants waived the argument set forth in issue four. First, the majority contends the issue is simply an attack on the reliability of Balcombe’s methodology and suggests, because this challenge was not raised in the motion to exclude Balcombe’s testimony, the issue was not “properly preserved.” I respectfully disagree.
In this court, as in the court below, appellants clearly separate their no-evidence argument based on lack of evidence from a no-evidence argument based on the unreliability of Balcombe’s testimony. In issue four, appellants are not challenging the reliability of the data or the methodology Balcombe employed; those challenges are the subject of issue three.[2] In issue four, appellants are saying no one ever provided evidence on the relevant questions, i.e., the two questions posed in the damages charge. This is not an attack on the reliability of Balcombe’s damages calculations; appellants are instead challenging the jury’s answer to the damages question based on the absence of testimony providing the value for AW Printing assuming compliance with the Purchase and Sale Agreement and the value as delivered. Balcombe could have provided those values for the jury, but failed to do so.
In the trial court, appellants repeatedly argued there was no evidence of damages resulting from their alleged breach of the Agreement. In their motion for a directed verdict, appellants argued, “[Tjhere is no evidence that any alternative deal would have gone forward at any particular lower price.” Appellants contended:
Because we don’t know the price that Mr. Dowd [Checkpoint’s decision maker] would have agreed to on behalf of Checkpoint and because there is no evidence of the price [appellants] would have agreed to, there can be no precise measure of the fair market value received and, therefore, there can be no evidence of actual damages in this case.
At the charge conference, appellants objected to submission of any damages question on no-evidence grounds: “[T]here is no evidence that any such breach caused any damages because there is no evidence that ... Checkpoint would have lowered the purchase price.” Appellants further argued, “[T]here is no evidence of the market value of AW Printing had [appellants] complied with the purchase and sale agreement, nor is there any evidence of the market value of AW Printing as delivered on January 9, 2001.” As a separate objection, appellants argued there was no reasonable basis in the evidence to calculate damages because Balcombe’s evaluation *762 was unreasonable as a matter of law. Thus, appellants separated their no-evidence challenge from their reliability challenge.
As a second ground for waiver, the majority concludes the argument based on the absence of evidence of the value of AW Printing if appellants had complied with the contract by disclosing loss of the Gym-boree business “is not properly before us because it was not raised in appellants’ initial brief’ and “is not fairly included within a general sufficiency point focusing on the flaws in expert testimony.” Again, I respectfully disagree.
In addition to the caption of issue four in their initial brief in this court, appellants, in the course of arguing this issue, contend, “Checkpoint ... failed to offer any evidence of either the value of AW Printing had Appellánts complied with the Purchase Agreement or of the value of AW Printing as delivered on January 9, 2001.” Under the same issue, appellants argue, “[T]he evidence is both legally and factually insufficient to prove either of the values that the jury was instructed to determine in Question 2, that is the value of AW Printing had Appellants complied with the contract and the value of AW Printing as delivered on January 9, 2001.” In a post-submission brief addressing this court’s questions at oral argument, appellants further explain:
Every one of [appellants’] alleged failures to comply with the Agreement concerned a failure to disclose various information before closing. It is self evident that [appellants’] alleged failures to disclose information did not cause the value of AW Printing to decline. The value of AW Printing would have been the same regardless of whether this information had been disclosed. In other words, if [appellants] had complied with the Agreement by disclosing all information which Checkpoint contends should have been disclosed, the value of AW Printing would have been the same as the value of AW Printing as delivered. Accordingly, under the instruction given to the jury, Checkpoint, as a matter of law, had no damages.[3]
An appellate court treats an issue or point as covering every subsidiary question that is fairly included in the issue or point. Weingarten Realty Investors v. Harris County Appraisal Dist., 93 S.W.3d 280, 284 (Tex.App.-Houston [14th Dist.] 2002, no pet.); see Tex.R.App. P. 38.1(e); Stephenson v. LeBoeuf, 16 S.W.3d 829, 843-44 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). In addition, this court has discretion whether to consider the supplementation of an argument presented in a post-submission brief. See City of Houston v. Precast Structures, Inc., 60 S.W.3d 331, 340 n. 4 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (holding, in case before it, appellant waived argument presented for first time in post-submission brief, but citing, in support, Russell v. City of Bryan, 919 S.W.2d 698, 707 (Tex.App.-Houston [14th Dist.] 1996, writ denied), in which this court observed it has discretion whether to deem points waived for briefing inadequacies or allow amendment or re-briefing).
In -issue four in their initial brief, appellants refer three times to the absence of evidence of the value of AW Printing if appellants had complied. Appellants’ post-submission brief does not add a new appellate issue; it merely suppléments an issue in its initial brief to this court. The argument is properly before the court.
*763 Under the charge submitted to the jury, Checkpoint had no damages. Accordingly, I would sustain appellants’ issue four and render judgment Checkpoint take nothing. I therefore respectfully dissent.

. Balcombe concluded Checkpoint's damages were $2,861,000. He stated he measured damages as the difference between what Checkpoint expected to receive versus what they actually did receive. According to Bal-combe, Checkpoint expected to receive $10,806,000 of value because that is what they paid.

. Appellants present seven issues for review. In issues one through three, they challenge the legal and factual sufficiency of the evidence to support the conclusion Checkpoint sustained damages, and did so in the amount of $2,565,500. In issue three, they specifically contend Balcombe’s expert testimony was so unreliable in six regards that it constituted no evidence. In issue four, as set forth above, they argue the evidence was legally and factually insufficient to support the two components of damages submitted to the jury. In issue five, they challenge the legal and factual sufficiency of the evidence to prove the alleged breach caused all Checkpoint’s damages. In issue six, they challenge the legal and factual sufficiency of the evidence to support the finding they failed to comply with the Agreement. In issue seven, they contend the damage award is excessive and request remit-titur.

. Appellants made essentially the same argument to the trial court in their post-judgment motion.