Motion for Rehearing En Banc Granted; Panel Opinion of February 26, 2004
Withdrawn; Reversed and Remanded and Majority and Dissenting En Banc Opinions
filed October 13, 2005









 

Motion for Rehearing En Banc Granted; Panel Opinion of
February 26, 2004 Withdrawn; Reversed and Remanded and Majority and Dissenting
En Banc Opinions filed October 13, 2005. 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-00-00091-CV

____________

 

THE STATE OF TEXAS, Appellant

 

V.

 

PR INVESTMENTS AND
SPECIALTY RETAILERS, INC., Appellees

 



 

On Appeal from the County
Civil Court at Law No. 4

Harris County, Texas

Trial Court Cause No. 691,263

 



 

D I S S E N T I N G   E N  
B A N C   O P I N I O N

I respectfully dissent from the en banc
court=s disposition of
the case.  I do so for the reasons set
forth below, as well as those in the original panel opinion.[1]  








From at least February 1998 through the
commissioners= hearing in May 1998, and again in March
1999, the State assured the property owners that construction in the condemned
property would proceed according to the Sparks plan.[2]  The 
calculation of damages involves considering the nature of what the
condemnor intends to build and the use to which it intends to put the land.  City of Houston v. Precast Structures,
Inc., 60 S.W.3d 331, 336 (Tex. App.CHouston [14th Dist.]
2001, pet. denied).  To calculate
damages, the special commissioners heard evidence regarding the Sparks
plan.  In preparing for the special
commissioners= hearing and trial, the property owners
necessarily expended time and resources analyzing the effects of the Sparks
plan on access and damages to their remainder property.  On the eve of trial, the State notified PR
InvestmentsCbut not Specialty
RetailersCit intended to proceed under the Corder
plan.

Today, the majority holds, inter alia,
that the trial court erred when it concluded (1) the change in plans by the
State deprived the court of Ajurisdiction@ over the trial de
novo; (2) the change meant the State did not bring the condemnation proceeding
properly under Texas Property Code section 21.0195(c), thus justifying an award
of attorney=s fees and expenses to the property
owners; and (3) the trial court could properly dismiss the condemnation action,
without prejudice.  Majority op. at
2.  In reversing the trial court=s judgment, the
majority is, in effect, replacing trial de novo with trial by ambush in
condemnation proceedings.








By blurring the distinction between the
trial court=s subject matter jurisdiction and the
trial court=s appellate jurisdictionCor its power to
proceedCin eminent domain
cases, the majority is able to permit the trial court to proceed to trial de
novo despite a substantial and prejudicial departure from the damages issues
presented to the special commissioners. 
Indeed, the majority faults the dissent for making this
distinction.  Id. at 14 n.9.  Such a distinction, however, is consistent
with the manner in which courts have characterized eminent domain proceedings.

Appellate courts have consistently stated
the trial court acquires subject matter jurisdiction over the eminent domain
proceeding when the condemnor files a legally sufficient petition in condemnation.  See State v. Nelson, 160 Tex.
515, 334 S.W.2d 788, 790 (1960) (stating filing of written statement for
condemnation is initiatory step in proceeding, and it is by virtue of this step
jurisdiction of subject matter is acquired); see also Lin v. Houston Cmty.
Coll. Sys., 948 S.W.2d 328, 332 (Tex. App.CAmarillo 1997,
writ denied) (stating it is well established that jurisdiction of condemnation
proceeding does not attach unless condemnation petition includes legally
sufficient description of property sought to be condemned and citing Nelson,
334 S.W.3d at 790); Aquila Sw. Pipeline Corp. v. Gupton, 886 S.W.2d 497,
501 (Tex. App.CHouston [1st Dist.] 1994, no writ)
(stating, by virtue of filing petition which reflects statutory requirements,
jurisdiction over the subject matter is acquired, and citing Nelson, 334
S.W.2d at 790); Seiler v. Intrastate Gathering Corp., 730 S.W.2d 133,
137 (Tex. App.CSan Antonio 1987, no writ) (same), overruled
on other grounds by Schumann v. City of Schertz, 100 S.W.3d 361, 367 (Tex.
App.CSan Antonio 2002,
no pet.).








Appellate courts have also consistently
stated eminent domain proceedings remain administrative in nature until a party
files an objection to the special commissioners= award; and the
trial court does not acquire the power to adjudicate until the proceeding
reaches that point.  See John v. State,
826 S.W.2d 138, 141 n.5 (Tex. 1992) (stating, if no party timely files
objections, the trial court can perform only its ministerial function and
render judgment based upon the commissioner=s award); see
also Hubenak v. San Jacinto Gas Transmission Co., 141 S.W.3d 172,
179 (Tex. 2004) (describing period from filing of condemnation petition until
filing of any objections to commissioners= findings as an Aadministrative
proceeding@ that converts into a Anormal pending
cause@ when party files
objections to commissioners= findings).  Moreover, the power the trial court has in
the adjudicatory phase is not the same as the power of a court of original
jurisdiction.  See Nelson, 334
S.W.2d at 791 (stating to hold county court on appeal has all the power of a
court of original jurisdiction would tend to thwart Legislature=s purpose in
providing for the administrative hearing).

Given the special nature of eminent domain
proceedings, it is therefore legitimate to distinguish between Asubject matter
jurisdiction@ and the Apower@ of the trial
court in relation to the subject matter before it.  Such a distinction also has implications for
whether the defect in the court=s exercise of its
power is waivable and whether the defect at issue implicates the finality of a
court=s action.[3]  Subject matter jurisdiction, once properly
acquired by the county court, may not be divested.  See Dallas I.S.D. v. Porter, 709
S.W.2d 642, 643 (Tex. 1986).  The power
to proceed, however, is a separate issue.








In reaching its conclusion the State=s change of plans
did not deprive the trial court of Ajurisdiction,@ the majority
cites six cases.  Majority op. at 17B18.[4]  Four of the cited cases involve defects in
the appointment or service of the special commissioners.  In Pinnacle Gas Treating, Inc. v. Read,
a judge other than the one to whom the condemnation was assigned appointed the
special commissioners, and the supreme court stated any error was Acurable@ by trial de
novo.  160 S.W.3d 564, 567 (Tex.
2005).  In Fort Worth & Denver
Northern Railway. Co. v. Johnson, the supreme court observed that, if
erroneous, the appointment of commissioners when parties had agreed on other
commissioners was not sufficient to invalidate the whole proceeding because the
property owners had a full opportunity to contest commissioners= award. 125 Tex.
634, 84 S.W.2d 232, 234 (1935).  In Gulf,
Colorado & Santa Fe Railway Co. v. Ft. Worth & Rio Grande Railway Co.,
the property owner objected that the appointed commissioners were not
disinterested because they were partially responsible for any condemnation
damages; and the supreme court stated the property owner could have secured
ample protection by filing objections to the award and obtaining trial de novo
before the county court with the right of appeal to the court of appeals.  86 Tex. 537, 26 S.W.54, 60 (1894).  In City of Houston v. Stovall, the
trial court granted the landowners= motion to
dismiss, which was based on the fact only two commissioners participated in
making the award; and, in reversing, the court of appeals relied on supreme
court precedent upholding the validity of an award joined by only two of three
commissioners.  249 S.W.2d 246, 247B48 (Tex. Civ. App.CGalveston 1952,
writ ref=d n.r.e.).

Only two of the cases even arguably
concern matters touching on the content of what was before the special
commissioners.  Blasingame v. Krueger
was a  mandamus action in which the
property owners challenged an order quashing their subpoenas for witnesses at
the commissioners= hearing. 
800 S.W.2d 391, 394 (Tex. App.CHouston [14th
Dist.] 1990, orig. proceeding).  This
court stated simply that the parties, who would have a chance to conduct
regular discovery during the proceeding in county court, had an adequate remedy
a law.  Id.








In City of Houston v. Bankers Mortgage
Co., the only Aevidence@ the City offered
before the special commissioners was the City=s letter to the
property owner containing its offer for the property.  514 S.W.2d 326, 327 (Tex. Civ. App.CHouston [1st
Dist.] 1974, writ ref=d n.r.e.). 
In responding to the property owner/appellee=s argument that
the lack of evidence was jurisdictional, the court of appeals concluded the
burden to produce evidence was on the landowner, and also stated, AThe failure of the
Commissioners to hear evidence is not a jurisdictional defect.@  Id. at 328.

The majority=s cases are not
helpful in deciding the present case for three reasons.  First, even if the courts were holding the
defect at issue did not implicate Asubject matter@ jurisdiction, the
opinions do not address the question in the present case, which is the extent
to which the trial court=s adjudicatory power may or may not be
limited to the damages issues before the special commissioners.  The supreme court has, at a minimum,
acknowledged that the trial court does not have unlimited power in eminent
domain proceedings.  See Nelson,
334 S.W.2d at 791.[5]  Rather, a trial court in an eminent domain
proceeding lacks the power to enlarge the subject matter of the cause and is
limited to a review of those damages issues the special commissioners
considered.  See Bd. of Regents of the
Univ. of Tex. Sys. v. Puett, 519 S.W.2d 667, 670B71 (Tex. Civ. App.CAustin 1975, writ
ref=d n.r.e.).[6]  The State conceded as much in its initial
brief in this court.  See  State v. PR Invs., 132 S.W.3d 55, 64 (Tex. App.CHouston [14th Dist.] 2004, pet.
filed)
(discussing the State=s concession).








Second, none of the cited cases involve a
situation in which the condemnor made substantial and prejudicial changes to
its condemnation plans after presenting those plans to the special
commissioners.  Blassingame and Bankers
Mortgage Co.Cthe only cases involving defects even
arguably related to substance rather than formCconcerned only the
preclusion and lack of evidence, respectively. 
Blassingame and Bankers Mortgage Co. did address the
extent to which the condemning authority may, during the trial de novo, deviate
from the damages issues and evidence before the special commissioners.  The majority in the present case also does
not address whether the condemnor may make unlimited changes to the damages
issues and evidence it presents to the special commissioners.  Because the majority has wholly failed to
define the scope of the changes the condemnor may make to the damages issues
upon trial de novo, bench and bar are left guessing about the legitimate scope
of the trial de novo.

Third, to the extent these cases rest on
the premise the defect at issue was Acurable@  by the trial de novo, the majority does not
explain how the property owners= expenditure of
resources analyzing the abandoned plans would be curable by the trial de novo
in the present case.  The majority refers
to the State=s admissionCto the trial court
and to this courtCthat it would be appropriate for the trial
court to order the State to pay the for the increased expenses, including
attorney=s fees and expert
fees, caused by the switch from the Sparks to the Corder plan.  Majority op. at 29, 31.








I would conclude the  attorney=s fees and
expenses (including expert expenses) spent analyzing and litigating the
abandoned plan constitute Athe increased
attorney=s fees and
expenses caused by the switch from the Sparks Plan to the Corder Plan.@[7]  Based on the uncontroverted testimony, the
trial court awarded an amount reflecting those fees and expenses.[8]

Having reversed the trial court=s judgment, the
majority does not explain how the property owners are to recoup the fees and
expenses incurred in analyzing and litigating the abandoned plan.  The majority, instead, suggests some lesser
amount would be appropriate and apparently ties award of that amount only to
the discovery abuse, not to the substantial change from the plans presented to
the special commissioners.

In sum, the net effect of the majority=s decision is to
allow the condemning authority to completely subvert the administrative phase
of an eminent domain proceeding.  Unlike
a purely procedural defect, such as the appointment of commissioners in Read,
releasing the condemnor from a need to present the commissioners with evidence
of what the condemnor actually intends to construct does indeed render the
administrative proceeding irrelevant.  Cf.  Read, 160 S.W.3d at 567 n.4 (rejecting
property owner=s argument that to say error is curable by
trial de novo renders administrative condemnation irrelevant; instead
reasoning, when parties are satisfied with administrative proceeding, they may
forgo right to trial, saving money and expense).








The condemning authority now has virtually
no incentive to present the special commissioners with evidence of the nature
of what it actually intends to build or the use to which it intends to put the
land.  See Precast Structures, Inc.,
60 S.W.3d at 336.  As the State=s attorney
presciently observed in this case, AThat=s what=s weird about
these [eminent domain] cases . . . essentially one party in litigation can
change the facts.@

In short, the majority has, in essence,
endorsed trial by ambush in the eminent domain arena.  For the preceding reasons and those set forth
in the original panel opinion, I respectfully dissent from the decisions to
grant en banc rehearing and to reverse the judgment of the trial court.

 

 

/s/      John S. Anderson

Justice

 

Judgment
rendered and Majority and Dissenting En Banc Opinions filed October 13, 2005. 

En banc
(Justices Yates, Hudson, Fowler, and Guzman join the Majority Opinion; Chief
Justice Hedges and Justices Edelman and Seymore join the Dissenting
Opinion.)  (Anderson, J., dissenting.)











[1]  State v. PR
Invs., 132 S.W.3d 55 (Tex. App.CHouston
[14th Dist.] 2004, pet. filed).





[2]  This is the
same plan to which the panel referred as the ASparks
and Barlow plan.@  See PR
Invs., 132 S.W.3d at 57 n.2.





[3]  In support of
its contention Asubject matter jurisdiction,@ Ajurisdiction,@ Aappellate jurisdiction,@ and Apower to act,@ are
interchangeable terms, lack of any of which implicates finality, the majority
cites University of Texas Southwestern Medical Center at Dallas v.
Loutzenhiser, 140 S.W.3d 351, 358B59 (Tex.
2004).  Majority op. at 14 n.9.  Loutzenhiser was not an eminent domain
case.  It is also clear from the context
the Loutzenhiser court was analyzing whether a statutory requirement
implicated subject matter jurisdiction concerns.  See id. at 358B59.  The court
wrote, AThe failure of a jurisdictional requirement deprives
the court of the power to act . . . and ever to have acted, as a matter
of law.@  Id. at
359 (emphasis added).  The converse (i.e.,
that lack of power to act results in a loss of subject matter jurisdiction),
however, does not necessarily follow.





[4]  Throughout its
opinion, the majority also refers to Hubenak v. San Jacinto Gas Transmission
Co., 141 S.W.3d 172 (Tex. 2004).  Hubenak
involved an alleged defect related to the statutory requirement that the
condemnation petition state that the condemning entity and the property owner
were unable to agree on damages.  See
id. at 174, 176 (citing Tex. Prop.
Code Ann. ' 21.012 (Vernon 2004)).  Unlike Hubenak, the present case does
not involve a defect in the petition, but a defect in the substance of what was
before the commissioners as compared to that before the trial court, a defect
which occurred when the administrative phase of the condemnation converted into
the judicial phase and which implicates the trial court=s power to proceed, not its subject matter
jurisdiction.  Hubenak is
inapposite.





[5]  The majority
contends the statements in Nelson on which the dissenters rely are
obiter dicta.  Majority op. at 19.  In Nelson, however, the supreme court
was delineating the eminent domain jurisdiction of the county court.  See State v. Nelson, 160 Tex.
515, 334 S.W.2d 788, 790B91 (1960).  When
the supreme court makes a statement very deliberately after mature
consideration and for future guidance in the conduct of litigation, that
statement is judicial, not obiter, dictum and is A>at
least persuasive and should be followed unless found to be erroneous.=@  Edwards v.
Kaye, 9 S.W.3d 310, 314 (Tex. App.CHouston
[14th Dist.] 1999, pet. denied)  (quoting
Palestine Contractors, Inc. v. Perkins, 386 S.W.2d 764, 773 (Tex.
1964)).





[6]  The majority
contends the Austin Court of Appeals incorrectly stated that the trial de novo
is limited to issues involved in the administrative proceeding before the
special commissioners.  Majority op. at
21 (citing Bd. of Regents of the Univ. of Tex. Sys. v. Puett, 519 S.W.2d
667, 670B71 (Tex. Civ. App.CAustin
1975, writ ref=d n.r.e.)).  The
majority then observes the trial court has the power to determine the condemnor=s right to condemn, whereas the commissioners are
limited to findings on compensation.  Id.  It is clear from the context of the Puett
opinion that the Austin court was referring to Amatters
as were properly before the commissioners.@  Puett,
519 S.W.2d at 671 (emphasis added).





[7]  I reach this
conclusion in the present case because the record reflects the Sparks Plan was
the focus of the condemnation proceeding virtually from its inception.   This conclusion is also consistent with what
a condemnee is to be awarded under Texas Property Code section 21.0195, if Aa court dismisses a condemnation proceeding on the
motion of the [Texas Department of Transportation] or as a result of the
failure of the department to bring the proceeding properly.@   Tex. Prop. Code Ann. ' 21.0195(c) (Vernon Supp. 2004); see also Board
of Regents of the Univ. of Houston Sys. v. FKM Partnership, Ltd., CS.W.3dC,C, 2005 WL 851178, at *5 (Tex. App.CHouston [14th Dist.] Apr. 14, 2005, no pet. h.)
(stating, under Texas Property Code section 21.019, landowner=s damages include reasonable and necessary fees for
attorneys, appraisers, photographers, and for the other expenses incurred by
property owner).  In FKM Partership,
Ltd., this court remanded for a hearing on the damages related to the
portion of land the condemning authority sought to dismiss.  Id. at *5.





[8]  With the
exception of credits if the case were not appealed, the trial court=s award of fees and expenses reflects the property
owners= uncontroverted testimony.  The trial court, however, gave the State a
greater credit against the fees awarded to PR Investments than the testimony
supported if the case were not appealed.